**M.L.C., INCORPORATED, Plaintiff,**

v.

**NORTH AMERICAN PHILIPS CORP., et al., Defendants.**

**No. 78 Civ. 6080 (SWK).**

United States District Court, S.D. New York.

Jan. 2, 1986.

Murphy & O'Connell, New York City by Kathleen O'Connell, for plaintiff.

Gifford, Woody, Palmer & Serles, New York City by James P. O'Neill, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff, M.L.C., Incorporated ("MLC"), is before the Court on its fourth[1] motion for sanctions pursuant to Fed.R.Civ.P. 37(b)(2) against Philips Business Systems, Inc. ("PBSI") and North American Philips

---

1. MLC's first motion for sanctions was filed in November, 1980. Magistrate Gershon ordered defendants to produce documents and supplement interrogatory answers.

 MLC's second motion for sanctions was granted in August, 1982. The Magistrate found that defendants deliberately refused to comply with a previous order directing defendants to respond to 101 of plaintiff's request for admissions. Magistrate Gershon stated: "Instead of responding so as to meet the substance of the requested admissions, the defendants virtually duplicated their original responses." August 2, 1982 Order, at 2. The Court ordered MLC's Request for Admissions admitted and awarded MLC counsel fees.

 MLC withdrew its third motion for sanctions in or about September, 1982, when defendants finally released a deposition transcript requested by MLC.

Corporation ("NAPC").[2] On October 11, 1985, in a pre-trial conference, this Court denied plaintiff's request for an order striking defendants' answer to plaintiff's second amended complaint and denied plaintiff's motion for a default judgment.

However, the Court reserved decision on other possible sanctions, pending its consideration of the arguments offered at that pre-trial conference. After considering the arguments and the post-conference affidavits submitted by the parties, the Court rules that sanctions should be imposed upon PBSI and NAPC.

## I. FACTUAL BACKGROUND

Between April, 1972 and May, 1975 MLC engaged in the importation and distribution of business forms known as magnetic ledger cards. These cards were used with business machines produced in the Netherlands by N.V. Philips. NAPC imported these machines and PBSI distributed these machines throughout the United States.

In 1973, PBSI entered the business forms business. MLC contends that PBSI, in violation of the antitrust laws, successfully orchestrated a plan to drive MLC out of business, which ended with PBSI's purchase of MLC in 1975.

The instant discovery dispute concerns various documents which MLC alleges were either produced by defendants in an untimely fashion, suppressed, or destroyed. MLC moves for the imposition of sanctions. Defendants maintain that they did not possess or exercise control over these documents, and thus, were not obligated to produce them. Defendants cross-move for sanctions, contending that no basis exists for MLC's motion.

## II. THE LAW

██ A motion for the production of documents is entitled to broad and liberal treatment. *Goldman v. Checker Taxi Company,* 325 F.2d 853 (7th Cir.1963).

Documents need not be in a party's possession to be discoverable; they need only be in the party's custody or control. *In Re Folding Carton Antitrust Litigation,* 76 F.R.D. 420, 423 (N.D.Ill.1977) ("It is well settled that a party need not have actual possession of documents to be deemed in control of them.").

██ Control includes the legal right of the producing party to obtain documents from another source upon demand. *See Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir.1984). A party may be ordered to produce documents where that party has the legal right to obtain the documents, even though that party retains no copy, and regardless of whether the documents are beyond the jurisdiction of the court. *Zervos v. S.S. Sam Houston,* 79 F.R.D. 593, 595–96 (S.D.N.Y.1978).

The term "control" is broadly construed. In *Herbst v. Able,* 63 F.R.D. 135 (S.D.N.Y. 1972), the court ordered a corporate defendant to produce transcripts of former and present employees' testimony before the Securities and Exchange Commission ("SEC"), even though the corporation could only obtain transcripts from the SEC if the employees requested it. The Court found that the corporation's employees were "persons within its control" and that the corporation was obligated to produce the documents. *Id.* at 138. *See also Hanson v. Gartland Steamship Company,* 34 F.R.D. 493, 496 (N.D.Ohio 1964) (Whether documents in the possession of a party's attorney are under the control of the party is resolved by discerning their origin. "If the items were originally produced by the party or his agents, and then turned over to the attorney, they are considered under the party's control.").

Similarly, in *Cooper Industries, Inc. v. British Aerospace,* 102 F.R.D. 918 (S.D.N.Y.1984), the Court ordered defendant to produce documents in the possession of its affiliate, which was not a party to the action. Defendant was wholly owned by

---

**2.** PBSI is a wholly-owned subsidiary of NAPC. N.V. Philips is the parent of NAPC. N.V. Philips is not a party to this action.

the affiliate when the suit was filed. Plaintiff sought production of certain documents that defendant asserted were not in its possession. The plaintiff maintained, and the defendant did not deny, that the documents were in the possession of defendant's British affiliate.

In granting plaintiff's motion for sanctions and to compel production, the Court stated "it is inconceivable that defendant would not have access to these documents and the ability to obtain them for its usual business." *Id.* at 919–20. The Court also stated: "[d]efendant cannot be allowed to shield crucial documents from discovery by parties with whom it has dealt in the United States merely by storing them with its affiliate abroad." *Id.* at 920. The Court ordered the defendant to produce the documents demanded if the documents were in either defendant's possession or in the possession of the British affiliate. *Id.* With these principles in mind, the Court turns to defendants' arguments.

### III. THE BLANKET SUPPLY AGREEMENTS

In December, 1979, MLC served its first request for production of documents, demanding, *inter alia,* the production of all contracts and agreements made between PBSI, NAPC, or N.V. Philips (parent corporation) and Jollenbeck and Kasten ("J & K") or Magnetdruck ("MD"), defendants' West German suppliers. In January, 1980, MLC then served its first set of interrogatories upon the defendants.

In April, 1980, MLC moved to compel the production of documents and answers to interrogatories. Defendants objected to the scope of these requests, arguing, *inter alia,* that defendants should not be required to produce any documents belonging to N.V. Philips, the parent corporation, be-

cause N.V. Philips was not a party in the action.

United States Magistrate Nina M. Gershon granted plaintiff's motion to compel production of documents and answers to interrogatories, and stated, in pertinent part:

> With respect to the requests addressed to the parent corporation, N.[V]. Philips, which has not been served in this action, although named as a party, it is correct that they need not respond as parties since they are not in the case. However, the fact that they are not in the case does not mean that other defendants should not be required to produce *documents in their control* relating to N.[V]. Philips, so long as they are otherwise relevant. *Accordingly, the objection raised by the defendants is overruled.*

Tr. of September 12, 1980 hearing, at 24–25 (emphasis added).

In February, 1983, in a surreply to MLC's cross motion for summary judgment,[3] defendants produced two exclusive distributor agreements known as blanket supply agreements (the "Agreement(s)"). One Agreement was formed by N.V. Philips and J and K, while the other was formed by N.V. Philips and MD. In these Agreements, which are substantially identical, the West German suppliers allegedly ceded worldwide distribution rights in their magnetic ledger cards to N.V. Philips.

MLC alleges that defendants failed to produce these critical documents, in violation of Magistrate Gershon's September 12, 1980 order, and should be sanctioned.[4] Defendants essentially raise five defenses to this allegation.

Defendants' main argument is that neither PBSI nor NAPC had possession, custo-

---

3. Defendants moved for summary judgment before United States District Judge Gerard L. Goettel. Defendants' motion was granted with respect to the monopoly claims asserted by MLC but denied with respect to MLC's restraint of trade allegations. These latter claims are the only ones remaining in this suit.

4. MLC also argues that defendants' failure to produce violated Magistrate Gershon's January 8, 1981 Order. It is not clear that defendants violated this order. However, the Court does not need to address this issue since defendants were obligated to produce the Agreements pursuant to Magistrate Gershon's September 12, 1980 Order.

dy, or control of these Agreements and thus, were not obligated to produce them. Second, defendants argue that MLC never requested the Agreements in their interrogatories. Third, defendants argue that they furnished MLC a copy of one Agreement in January, 1981, as an exhibit to a deposition transcript. Fourth, defendants argue that MLC had always been aware of these Agreements, since they were produced in a related suit, *General Business Systems, Inc. v. North American Philips Corp.*, No. C 77–2328 (N.D.Cal. Dated October 23, 1980) ("GBS action"), which MLC followed closely. Finally, defendants argue that these Agreements provide a defense to any of plaintiff's remaining antitrust claims. Defendants contend it would have been "wholly illogical" for them to have withheld their production.

Defendants' primary argument with respect to the Agreements is that neither PBSI nor NAPC had possession or control over these documents and thus, were not obligated to produce them. MLC counters that these Agreements were produced by PBSI and NAPC in the GBS action,[5] and should have been produced here. While MLC submits numerous documents in an effort to prove that PBSI produced these Agreements in the GBS action, defendants attempt to show that these Agreements were produced in the GBS action by N.V. Philips (the parent corporation and a party in the GBS action), and not by PBSI or NAPC.

■ Determining which defendant in the GBS action produced these Agreements is unnecessary. Forrest Hainline, III, who served as counsel for N.V. Philips, PBSI, and NAPC in the GBS action, produced the Agreements on NAPC's and PBSI's behalf. Thus, PBSI and NAPC had control—as

that term is defined in relation to discovery obligations—over these documents and should have produced them. As MLC notes, even if N.V. Philips produced these documents in the GBS action, "... as N.V. Philips' co-defendant in the GBS action, with one common attorney among them, Forrest Hainline, III, [d]efendants would have had the legal right to obtain these documents from their co-defendant N.V. Philips in that action and/or from their counsel, Mr. Hainline, for production in this action." Plaintiff's reply memorandum of points and authorities on its fourth motion for sanctions, dated December 14, 1983, at 6–7.

■ This Court's finding that PBSI and NAPC had control over the Agreements is further supported by defendants' ability to easily obtain these Agreements when it was in their interest to do so. Shortly after MLC challenged defendants' claims that exclusive distribution agreements existed, defendants produced the Agreements. Defense counsel stated that he called Forrest Hainline, III on the telephone "to find out where those agreements were", and Mr. Hainline "sent us copies of those." Tr. of October 11, 1985 conference, at 4. Defense counsel also states that "[t]o obtain these documents, defendants had to go to the files of N.V. Philips, as neither PBSI [n]or NAPC had copies." Affidavit of James P. O'Neill, Sworn to on November 30, 1983, at 12.

Defendants have shown no reason why similar efforts could not have been made when defendants were first served with MLC's document production request. *See Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D.Mass.1976) ("It is well established that a private corporation can-

---

5. Although we need not resolve this issue, there is evidence that PBSI produced the Agreements in the GBS action. In the Affidavit of Jon Michaelson, Sworn to on December 9, 1983, the GBS counsel stated that PBSI produced these Agreements in January, 1979 pursuant to a court order. Although the transcript of the hearing held in connection with GBS's motion to compel does not conclusively show that PBSI was ordered to produce the Agreements, Forrest

Hainline, III entered an appearance at the hearing only for PBSI. See plaintiff's exhibit A, at 3, dated November 4, 1985.

Furthermore, in April, 1979, GBS served its motion to amend the complaint upon PBSI and NAPC. A copy of both Agreements was appended to these complaints, thereby refuting defendants' contention that the Agreements were not in their possession or control.

not avoid producing documents by an alle-·gation of 'impossibility' if it can obtain the requested information from the sources under its control.").

Moreover, although the extent of the relationship between Forrest Hainline, III and defendants' present counsel is unclear, there is no indication that Mr. Hainline would be uncooperative had defendants asked him to produce the Agreements earlier. In fact, it appears that Mr. Hainline and defendants' present counsel have a working relationship.[6]

■ Defendants' second argument, that MLC never requested the production of these documents in their interrogatories, is disingenuous. Even if defendants were correct that none of the interrogatories were applicable to the Agreements, it is clear that MLC's request for production of documents specifically referred to these Agreements:

All contracts, agreements, memoranda of understanding and all amendments thereto between [J & K and MD] and PBSI, or NAPC, or N.V. Philips.

Plaintiff's first request for production of documents, returnable January 21, 1980, at ¶ 11, 15. These requests obviously include the Agreements.[7] While defendants may have a valid claim that the interrogatories did not require defendants to identify the Agreements, there can be no question that the document production request called for the production of the Agreements.

■ Defendants' third argument, that MLC received a copy of one of the Agreements as an exhibit to a transcript of the deposition of Dieter Ockenfels (chief executive of J & K) before the summary judgment motion was argued, is unpersuasive. Even if this statement is true, a party may not satisfy his burden of responding to a document production request by attaching responsive documents as exhibits to deposition transcripts. Cf. Fed.R.Civ.P. 34(b) (In responding to a document production request, a party "shall organize and label [the documents] to correspond with the categories in the request.").

■ Defendants' fourth argument, that MLC was aware of the Agreements since these documents were produced in the GBS action, is also unpersuasive. Even if true, an adversary's knowledge of the existence of documents is not a defense for a party's failure to produce these documents. Cf. Westhemeco Ltd. v. New Hampshire Ins. Co., 82 F.R.D. 702, 710 (S.D.N.Y.1979) ("Even though the documents which form the basis of the defense may be within plaintiff's knowledge in that plaintiff was in possession of them, this does not block plaintiff's request that defendant identify them.").

■ Defendants' fifth argument, that the Agreements actually supported defendants' case, is unconvincing. This is not a defense for failure to produce documents. Moreover, the Court is particularly troubled by the deposition testimony of several PBSI employees[8] who denied the evidence of exclusive distribution arrangements. This sort of evasiveness is precisely why MLC needed the documents, regardless of whether or not they support defendants' case. MLC was entitled to challenge the

6. MLC states that during oral argument of the parties' motion for summary judgment, Mr. Hainline sat with defendants' present counsel and was introduced to the court. See Affidavit of Patrick J. Murphy, Sworn to on December 14, 1983, at ¶ 9. Additionally, numerous depositions have allegedly been taken by defendants' counsel at Mr. Hainline's office. Id.

7. The Affidavit of James P. O'Neill, Sworn to on January 6, 1984, at 11–12 reads: "If such [A]greements had been in these defendants' files, they likely would have been produced, even though they were never specifically re-quested, in response to plaintiff's first document production request." The Court assumes that defendants were confusing the document production request with plaintiff's interrogatories.

8. See September 15, 1980 Deposition of Bud Lambert, at 80–81; September 23, 1981 Deposition of Ralph Stultz, Esq. (in-house counsel to PBSI and NAPC), at 296; August 26, 1981 Deposition of Joseph Miranda, Esq. (in-house counsel to PBSI and NAPC), at 120–21; May 1, 1980 Deposition of Arthur L. Hanrahan (President of PBSI), at 85–86.

legitimacy of the Agreements during these depositions.

## IV. OTHER DOCUMENTS

MLC contends that it has recently [9] obtained six documents (designated by plaintiff as exhibits J–O) from third party sources, which defendants improperly failed to produce.[10] These allegations, while not barred on res judicata or estoppel grounds, were previously raised in the context of the parties' motions for summary judgment.

Defendants concede that plaintiff's exhibits J (memorandum dated February 10, 1975), L (telex), M (telex), and N (letter dated November 12, 1975) were produced by N.V. Philips in the GBS case,[11] but argue that since they were in neither PBSI's nor NAPC's files, they need not have been produced. Defendants also argue that exhibit N was attached to the transcript of the Ockenfels deposition, and sent to MLC's counsel in January, 1981. As stated above, the fact that Forrest Hainline, III, counsel for N.V. Philips, NAPC, and PBSI produced these documents in the GBS action indicates that the documents should have been produced in the instant action. Moreover, a party may not satisfy his burden of producing documents by attaching responsive documents to deposition transcripts. In sum, the Court rejects defendants' argument with respect to these documents.

It is undisputed that MLC had received a copy of exhibit K (telex dated April 11, 1974) and exhibit O (part of business plan)

before the summary judgment motion was argued and in fact, furnished copies to the defendants pursuant to a court order. *See* plaintiff's counsel's letters to defendants' counsel, dated September 22, 1981 and October 7, 1982. Additionally, at a hearing before Magistrate Gershon, MLC admitted that it obtained exhibit O from the private file of a PBSI employee, and not from PBSI. Finally, unlike exhibits J, L, M and N, exhibits K and O were apparently not produced in the GBS action.

The last document referred to by MLC is PBSI's internal memo of April 9, 1974, which apparently contains defendants' plan to take over MLC's business. This document has never been produced in this action despite repeated demands for it. Defendants have submitted the affidavit of their in-house counsel, who states that a thorough search of defendants' files did not reveal this document. Affidavit of William Gerwig, Esq., Sworn to on February 5, 1981. Although more fully discussed in section VII below, MLC will have an opportunity to depose Mr. Gerwig if MLC chooses to reopen discovery.

In sum, with the exception of the April 9, 1974 memorandum, MLC now possesses all of the documents which are the subject of this motion. The Court now turns to the mitigating factors.

## V. MITIGATING FACTORS

 In considering the appropriate sanctions to levy against defendants, several mitigating factors raised by defendants

---

**9.** MLC's contention that it "recently" obtained these documents is incorrect and misleading. MLC had already brought to the Court's attention the alleged suppression of these documents during the summary judgment proceedings.

Moreover, MLC obtained some of these documents from Frank C. Buckley, Jr., a former PBSI employee, who took certain documents when he left the company in 1977. Interestingly, when defendants asked Magistrate Gershon to order MLC to produce the documents MLC obtained from Buckley, MLC's counsel stated: "I would assume that [defendants] have everything that I have from Buckley, because [defendants] went through a process of sorting the documents out. However, whatever I have

from Buckley is Buckley's personal property and not the property of PBSI." Tr. of July 9, 1981 hearing before Magistrate Gershon, at 36–37.

**10.** Defendants do not dispute the fact that these documents were requested by MLC during discovery.

**11.** In further support of defendants' position, Forrest A. Hainline III, defense counsel for defendants in the GBS case, states that exhibits J, L, M and N were produced by N.V. Philips in the GBS suit. See Affidavit of Forrest A. Hainline, III, Sworn to on November 29, 1983, at 2.

must be considered. While these factors have no bearing on defendants' obligation to produce these documents, the Court has considered them in fashioning an appropriate sanction for defendants' failure to produce these documents.

■ First, Judge Goettel was aware that the Agreements were produced late in the proceedings, since this argument was addressed at length in the context of the parties' summary judgment motions. However, Judge Goettel only referred to this issue in passing when he granted defendants' summary judgment motion [12] on plaintiff's monopoly claims:

Despite this rather persuasive authority, we decline to grant defendants' motion for summary judgment on the restraint of trade counts. The documents which allegedly establish an exclusive dealing arrangement between the German manufacturers and Philips or its designees were not produced in the discovery of this case, but came out, rather, in the *General Business Systems* action.

Opinion of Judge Goettel, dated May 3, 1983, at 26. Thus, Judge Goettel, who presided over the instant action when these allegations were initially raised, did not deem defendants' belated production of the documents to be particularly significant.

Second, it appears that MLC was aware of these Agreements before February, 1983. Several factors lead the Court to this conclusion. MLC's complaint was modelled after the one in the GBS suit. As Magistrate Gershon noted, "the complaint in the MLC case was filed in 1978 and, in most respects, tracks the language of the *GBS* complaint." Determination and Order dated December 12, 1979, at 3. In April, 1979, GBS filed its amended complaint for the asserted reason that recent discovery of the Agreements necessitated such a motion. Attached to plaintiff's motion for leave to file an amended complaint were copies of both Agreements. There is no indication that MLC was not aware of the amended complaint.

Additionally, after GBS's motion to amend its complaint was granted, PBSI answered the amended complaint and entered a counterclaim against GBS. PBSI alleged, *inter alia*, that agreements existed between N.V. Philips, MD, and J&K under which N.V. Philips had achieved the right to control distribution.

Furthermore, both the district court decision in the GBS action, rendered on October 23, 1980, and the Ninth Circuit affirmance, *General Business Systems, Inc. v. North American Philips Corp.*, 699 F.2d 965 (9th Cir.1983), referred to the exclusive distribution arrangements. The Court assumes that MLC did not focus on the details of these arrangements because they did not support MLC's position.

Additionally, there is evidence that MLC received a copy of one Agreement in January, 1981, as an exhibit to a deposition of Dieter Ockenfels, chief officer of J & K, which took place in September, 1979. While this document was never identified at that deposition and was unsigned, MLC did receive the Agreement long before the summary judgment motion was argued.

Finally, although the extent of the relationship between MLC's counsel and GBS's counsel is unclear, GBS's counsel assisted MLC's counsel in preparing for at least one deposition. *See* Affidavit of Patrick J. Murphy, Sworn to on July 31, 1979 and supporting memorandum of law, dated July 26, 1979. The Court doubts that through this interaction between counsel, MLC remained unaware of the existence of these Agreements.

While these factors do not justify defendants' failure to produce the Agreements, they must be considered before imposing sanctions, since they partially negate MLC's claims of prejudice. For example, MLC could have moved to compel the production of these specific agreements before the summary judgment motion was argued.

---

12. Defendants argue that Judge Goettel denied defendants' motion with respect to the restraint of trade allegations precisely because of defendants' failure to produce these Agreements earlier.

Third, although the Agreements were produced in the GBS action, N.V. Philips (a party to the Agreements) was a party in that suit. In the instant action, N.V. Philips was named as a party but was never served with a complaint. In December, 1981, three years after this suit was started, plaintiff apparently unsuccessfully attempted to serve N.V. Philips. In February, 1982, Judge Goettel granted N.V. Philip's motion to dismiss the complaint for plaintiff's failure to prosecute.

If N.V. Philips was a defendant in this action, MLC might have obtained these documents had MLC served N.V. Philips with a document production request. In the instant suit, the documents requested were apparently not in PBSI's or NAPC's files. Even though the Court finds that defendants had "control" over these documents, and thus, an obligation to produce, MLC fails to respond to defendants' contention that MLC brought these difficulties upon itself by failing to serve N.V. Philips directly, particularly since N.V. Philips was a party to the Agreements.

Finally, and most importantly, this Court is not convinced that the defendants' failure to produce the allegedly suppressed documents was a deliberate effort to circumvent the discovery rules. While this Court disagrees with defendants' interpretation of Magistrate Gershon's Order and their restrictive definitions of "control", defendants' arguments were made in good faith. Moreover, the Agreements were not considered important until the Ninth Circuit deemed them significant in defendants' summary judgment motion in the GBS action.

## VI. SANCTIONS

The Court finds that defendants improperly failed to produce documents. These documents were specifically requested by plaintiffs during discovery but were not produced. Plaintiffs must be able to correct defendant's failure to produce, and split the costs of this effort with defendants.

With respect to sanctions, MLC argues that defendants' failure to produce the Agreements and exhibits J–O has, *inter alia*, precluded MLC from effectively participating in nine depositions.[13] Additionally, plaintiff argues that had these documents been produced earlier in discovery, plaintiff would have sought Letters Rogatory to obtain depositions of employees at J & K, MD and N.V. Philips.

The Court finds that defendants' failure to produce the Agreements pursuant to MLC's document production request should be remedied by allowing MLC to reopen discovery. MLC may depose these nine individuals and split the costs of these depositions with defendants. MLC may also submit an application for Letters Rogatory to this Court. If this Court grants plaintiff's application, defendants will also share the cost of these depositions. Finally MLC may depose, at its own cost, any other individuals it deems necessary, including William Gerwig.

The parties have raised numerous allegations with respect to exhibits J–O. In some instances, MLC has possessed these documents for some time. Some documents seem to be of little import. The Court will allow MLC to depose each witness with respect to any of these exhibits. MLC is awarded the costs of the instant motion.

SO ORDERED.

---

13. Pieter C. Vink, Chairman of the Board, NAPC, and a Director of N.V. Philips; Frank Buckley, Pres. PBSI Data Systems Division; Frank Randall, Vice President of NAPC; Arthur Hanrahan, President of PBSI; Ralph Stultz, Esq. House Counsel to NAPC/PBSI; Joseph Miranda, Esq. House Counsel to NAPC/PBSI; James Hume, Vice President of PBSI; Bud Lambert, Marketing Manager of PBSI; Thomas Dickson, Customer Service Manager of PBSI.