## ADDAMAX CORPORATION

v.

## OPEN SOFTWARE FOUNDATION, INC., Digital Equipment Corporation, Hewlett–Packard Company.

### Civ. A. No. 91–11152–T.

United States District Court, D. Massachusetts.

April 29, 1993.

Samuel Adams, Ralph T. Lepore, III, Keith C. Long, Warner & Stackpole, Boston, MA, James V. O'Gara, Alan R. Kusinitz, and Patricia Oveis Kahn, Kelley, Drye & Warren, New York City, for Addamax Corp.

James C. Burling, Michelle D. Miller, Charles J. Gray, Peter A. Spaeth, Hale & Dorr, Boston, MA, for Open Software Foundation, Inc.

Eric Jaeger, Ropes & Gray, William L. Patton, Ropes & Gray, Boston, MA, Richard H. Alpert, Digital Equipment Corp., Maynard, MA, for Digital Equipment Corp.

Brian A. Davis, Robert S. Frank, Jr., Kevin P. Light, Nicholas J. Nesgos, Choate, Hall & Stewart, Boston, MA, Robert W. Sutis, Hewlett–Packard Co., Palo Alto, CA, Robert A. Skitol, Drinker, Biddle & Reath, Washington, DC, for Hewlett–Packard Co., Inc.

MEMORANDUM AND ORDER ON PLAINTIFF ADDAMAX CORPORATION'S MOTION TO COMPEL SIEMENS NIXDORF INFORMATION SYSTEMS, INC. TO PRODUCE DOCUMENTS PURSUANT TO A SUBPOENA DUCES TECUM (# 137)

COLLINGS, United States Magistrate Judge.

## I.  INTRODUCTION

Pursuant to Rule 45, F.R.Civ.P., the plaintiff Addamax Corporation (hereinafter "Addamax") served a subpoena *duces tecum* upon a non-party witness, Siemens Nixdorf Information Systems, Inc. (hereinafter "Nixdorf–U.S."). By a letter response, Nixdorf–U.S. objected to the subpoena on a variety of grounds.[1] When the parties appeared unable to resolve their disputes involving the subpoena informally, Addamax filed the instant motion to compel.

Notwithstanding the submission of this motion, Addamax and Nixdorf–U.S. continued to discuss the issues and, to their credit, reached certain agreements that significantly narrowed the purview of the motion to com-

---

1. *Inter alia,* Nixdorf–U.S. interposed an objection to Addamax's demand that it produce documents held by its corporate parent and grandparent, stating that any such documents were not within its "possession, custody or control." *See* # 139, Exh. B.

pel. *See* # 152. Further, at the hearing on the motion, counsel for Addamax indicated his willingness to forego the request for documents held by Siemens A.G. through Nixdorf–U.S. Thus, at this juncture, Addamax's motion to compel raises a single, discrete issue, that being whether Nixdorf–U.S. can be compelled to produce documents from the files of its German corporate parent.

## II. FACTUAL BACKGROUND

Prior to reaching the merits of the motion to compel, a brief review of the corporate interrelationships of the non-party witness is in order.[2] At all relevant times, Nixdorf–U.S., a Massachusetts corporation with a principal place of business in Massachusetts, had and continues to have its own officers, directors, employees, budget and physical facilities. In mid–1988 when defendant Open Software Foundation, Inc. ("OSF") was founded, Nixdorf–U.S., then named Nixdorf Computer Corporation, was a wholly-owned subsidiary of Nixdorf Computer A.G. (hereinafter "Nixdorf–Germany"), a German computer manufacturer. In turn, Nixdorf–U.S. was the corporate parent of various United States subsidiaries, including Nixdorf Computer Engineering Corporation (hereinafter "NCEC"), a wholly-owned research and development subsidiary, and High Technology Investments, Inc. (hereinafter "HTII"), an investment subsidiary.

Originally HTII provided the funding for OSF, having been the entity that executed the Sponsorship Funding Agreement. Shortly after the execution of the agreement, the sponsorship was transferred to NCEC whose president, Bernhard Wobker, served as the first Nixdorf representative on the OSF Board.

Another German computer company, Siemens A.G. ("Siemens"), was also an original sponsor of OSF in 1988. At that time and, indeed, until October of 1990 when Siemens acquired Nixdorf–Germany, the two companies were completely unrelated. After the acquisition, Nixdorf–Germany, renamed Siemens Nixdorf Information Systems, A.G.,

maintained its separate corporate identity, albeit now as a subsidiary of Siemens. The U.S. subsidiary, Nixdorf Computer Corporation, was renamed Siemens Nixdorf Information Systems, Inc. ("Nixdorf–U.S."), the non-party witness herein. NCEC and HTII were merged into Nixdorf–U.S.

## III. THE LAW GOVERNING THE MOTION TO COMPEL

Rule 45(a)(1)(C), F.R.Civ.P., provides that a subpoena issued thereunder shall

> command each person to whom it is directed to attend and give testimony or to produce and permit inspection and copying of designated books, documents or tangible things in the possession, custody or control of that person …

F.R.Civ.P. 45(a)(1)(C).

Pursuant to its subpoena served upon Nixdorf–U.S., Addamax seeks the production of OSF-related documents in the files of Nixdorf–Germany. Although no argument is advanced that Nixdorf–U.S. has either possession or custody of the documents in Germany, Addamax contends that Nixdorf–U.S. does have control over them within the meaning of the rule such that the non-party witness may be compelled to produce them.

Nixdorf–U.S. argues that Addamax's contention is without foundation either in law or in fact. First, it is noted that the term "control" is fairly uniformly "defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11 Cir., 1984); *see also Camden Iron and Metal, Inc. v. Marubeni America Corporation*, 138 F.R.D. 438, 441 (D.N.J., 1991); *A.F.L. Falck, S.p.A. v. E.A. Karay Co., Inc.*, 131 F.R.D. 46, 49 (S.D.N.Y., 1990); *Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D.Conn., 1989); *M.L.C., Incorporated v. North American Philips Corp.*, 109 F.R.D. 134, 136 (S.D.N.Y., 1986). As the subsidiary, not the parent, of the German corporation, Nixdorf–U.S. asserts that it has no "legal right" to demand the documents from Nixdorf–Germany.

---

**2.** This explanation of the corporate interrelationships is based upon the affidavit of John Paul. *See* Opposition of Non-Party Witness, # 160,

Exh. A. Addamax does not appear to dispute the facts as recited.

Further, Addamax, having the burden of proof on the issue of control, has produced no evidence to suggest that Nixdorf–U.S. has any such legal right.[3]

■ Caselaw reveals that the word "control" is broadly construed in application. *See, e.g., Camden Iron and Metal, Inc. v. Marubeni America Corp., supra,* 138 F.R.D. at 441; *Scott v. Arex, Inc., supra,* 124 F.R.D. at 41; *M.L.C., Incorporated v. North American Philips Corp., supra,* 109 F.R.D. at 136. In the circumstance when documents are in the possession of the corporate parent, but are sought from the subsidiary,

> ... control has been found to exist where the "alter ego" doctrine warranted piercing the corporate veil, ... and where the subsidiary was an agent of the parent in the transaction giving rise to the suit and in litigating the suit on the parent's behalf.

*Gerling International Insurance Co. v. Commissioner of Internal Revenue,* 839 F.2d 131, 140 (3 Cir., 1988) (citations omitted).

Addamax takes the position that Nixdorf–U.S. was the agent of Nixdorf–Germany with respect to OSF-related activities.

■ When considering such a claim, the focus is on the "nature of the relationship" between the purported agent and principal, here Nixdorf–U.S. and Nixdorf–Germany. *See Afros S.P.A. v. Krauss–Maffei Corporation,* 113 F.R.D. 127, 130 (D.Del., 1986). The Third Circuit has concluded that:

> Where the relationship is thus such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in litigation, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party.

*Gerling International Insurance Co. v. Commissioner of Internal Revenue, supra,* 839 F.2d at 141 (citations omitted).

Addamax argues that the evidence it has proffered demonstrates the relevant agency relationship and, further, proves it likely that Nixdorf–U.S. can obtain OSF-related documents from Nixdorf–Germany when it is in its interest to do so.

Addamax has submitted several documents to evidence its agency theory. *Inter alia,* these documents include: 1) an OSF document entitled "Sponsor List" which lists Nixdorf Computer A.G. along with Nixdorf Computer Corporation and Nixdorf Computer Computer (sic) as sponsor companies; 2) an OSF document entitled "sponsor contacts" listing eleven Nixdorf contacts including five in West Germany; 3) a letter to OSF from Siemens/Nixdorf Informationssysteme A.G. exercising the power to terminate and appoint members of the OSF Board; 4) an OSF "sponsor contact" list wherein Bernhard R. Wobker is named as President, Nixdorf Computer at a West German address; and 5) an agreement signed by Bernhard Wobker as Vice President, Open Systems (of Nixdorf Computer A.G.) (Declaration of James V. O'Gara, # 139, Exh. C; Motion, Etc. # 175, Exhs. E and F). In addition, Addamax cites three cases as legal support for its argument, each of which shall be discussed in turn.

The case of *Camden Iron and Metal, Inc. v. Marubeni America Corporation,* 138 F.R.D. 438 (D.N.J., 1991) involved a breach of contract action between Camden Iron and Metal, Inc. ("Camden"), a processor of scrap metals, and Marubeni America Corporation ("MAC"), a retailer of scrap metals. It was alleged that MAC refused to accept a shipment of scrap metals purportedly because the ultimate buyer, Perwaja Trengganu Sdn. Bhd. ("Perwaja"), refused to accept it. Camden sought to compel documents from MAC that were in the possession of its Japanese corporate parent, Marubeni Corporation ("MC"). The requested documents related to communications between MAC or MC and

---

**3.** As support for the proposition that "[t]he burden of proving 'control' is squarely on the plaintiff", Nixdorf–U.S. cited the case of *United States v. International Union of Petroleum and Industrial Workers,* 870 F.2d 1450, 1452 (9 Cir., 1989). In turn the Ninth Circuit relied on the case of *Norman v. Young,* 422 F.2d 470 (10 Cir., 1970), wherein the court stated "... a prima facie case of control is all that must be established to justify issuance of the order [to compel]." *Id.* at 473, citing 4 Moore's Federal Practice § 34.17 at 2538. Thus it appears that to succeed on its motion, Addamax's burden is to set forth a prima facie showing of control.

Perwaja, and thus were directly relevant to the primary issue in the litigation.

Concentrating upon the relationship between MAC and MC, the court determined that while the subsidiary and parent were clearly not alter egos, the transactional relationship between the two corporations was somewhat murky. The evidence showed that it was MC that made the initial, direct contact with Camden, and thereafter continued to play a significant role in the negotiation of the deal along with MAC. Indeed, MC had the final say in any arrangement MAC reached with Camden. There was no firm agreement regarding the split of any profits to be realized on the deal between MAC and MC; rather, the division was left to be decided in the future. Further, it was apparent that MAC obtained documents from MC with respect to the Camden transaction in the regular course of its business.

The court found the factual evidence to suggest "that MC and MAC acted in this transaction 'as one'." *Id.* at 443. Concluding that Camden had "met its burden of showing sufficient 'control' by MAC concerning these documents," MAC was ordered to obtain the documents from MC and produce them to the plaintiff. *Id.* at 444.

In the second case upon which Addamax relies, *M.L.C., Incorporated v. North American Philips Corp.,* 109 F.R.D. 134 (S.D.N.Y. 1986), the plaintiff filed a motion for sanctions against two defendants on the ground that they failed to comply with an earlier discovery order. The prior order on a motion to compel had recognized that the defendants' parent corporation, a non-party to the lawsuit, was not obliged to respond to the discovery requests, but that the defendants were required "to produce *documents in their control* relating to [their parent], so long as they are otherwise relevant. *M.L.C., Incorporated v. North American Philips Corp., supra,* 109 F.R.D. at 137. Thereafter, the defendants submitted two documents from their parent corporation to support their position in a summary judgment motion, documents that the plaintiff argued should have been, but were not, produced pursuant to the discovery order.

Reviewing the facts in the context of the motion for sanctions, the court concluded that the defendants had control over the documents within the meaning of the discovery rules because not only had they been produced by counsel representing both defendant subsidiaries and the parent in an earlier lawsuit, the defendants had the "ability to easily obtain these Agreements when it was in their interest to do so." *Id.* at 138. Sanctions were imposed upon the defendants for their improper failure to produce the documents.

In *Cooper Industries, Inc. v. British Aerospace, Inc.,* 102 F.R.D. 918 (S.D.N.Y., 1984), the third case cited by Addamax, the plaintiff sought documents that the defendant claimed were not in its possession, but rather were in the possession of its British affiliate. The defendant sold and serviced aircraft in the United States that were manufactured by the British affiliate. The lawsuit involved damage to an airplane that the plaintiff had purchased from the defendant.

The defendant moved for a protective order with respect to production based upon the provisions of the Hague Convention. The court ruled that the defendant had waived any right it may have had to protection under the Convention by its conduct in failing to seek a protective order when the discovery request was served or when the matter was first the subject of a conference, and in blatantly failing to comply with court discovery orders. The waiver issue aside, the court concluded that in any event, the documents were in the defendant's custody, writing:

> The documents plaintiff seeks (i.e., service manuals and blueprints) all relate to the planes that defendant works with every day; it is inconceivable that defendant would not have access to these documents and the ability to obtain them for its usual business.[2]

*Cooper Industries, Inc. v. British Aerospace, Inc., supra,* 102 F.R.D. at 919–920 and fn. 2 ("the documents and records that a corporation requires in the normal course of its business are presumed to be in its control unless the corporation proves otherwise....").

Having determined that the defendant had "improperly resisted the orders of this court" regarding the documents, the court ordered their production and awarded costs to the plaintiff. *Id.* at 920–921.

■ It is admittedly true, as Nixdorf–U.S. argues, that each of these cases is factually distinct from the scenario at hand. What is gleaned from these decisions, however, is that it is the nature of the transactional relationship between the subsidiary and parent that is pivotal. The court must examine the facts of the case before it in order to determine if the relationship is such that production of documents is to be compelled.

■ The documentary exhibits submitted by Addamax reflect that although HTII and then NCEC were the named sponsors of OSF, OSF apparently considered, or at least listed, Nixdorf–Germany both as a sponsor on its sponsor list and as a sponsor contact. A fully executed copy of the Assignment of Sponsor Funding Agreement from HTII to NCEC was sent from OSF's counsel to counsel at Nixdorf–U.S. Correspondence to OSF and its counsel was written on Nixdorf Computer (Nixdorf–U.S.) letterhead, signed by the director and assistant general counsel of Nixdorf–U.S. Bernhard Wobker, president of NCEC and the first Nixdorf representative on the OSF Board, also appears to have held the position of Vice President of Nixdorf–Germany. Finally, Nixdorf–Germany has exercised the right to terminate Mr. Wobker's appointment to the OSF Board, and has appointed Dr. Rudolph Bodo, a representative of Nixdorf–Germany, in his stead. At the same time, Nixdorf–Germany terminated the appointments of two alternates to the OSF Board and replaced them with two other gentlemen, one of whom is associated with Nixdorf–Germany.

Taken as a whole, this evidence, most particularly Nixdorf–Germany's exercise of the power to terminate and appoint members to the OSF Board, is sufficient to make out a prima facie case that Nixdorf–U.S. and Nixdorf–Germany acted as one with respect to OSF activities. The statement in Mr. Paul's affidavit that "[i]n a very real and practical sense, it was NCEC, rather than Nixdorf–Germany, which was responsible for the relationship between OSF and the Nixdorf organization" is abstruse and inadequate to impugn Addamax's showing.

As counsel for Nixdorf–U.S. cogently argues in his brief, the three cases relied upon by Addamax, i.e., *Cooper Industries, Inc. v. British Aerospace, Inc., supra,* 102 F.R.D. 918, *M.L.C., Incorporated v. North American Philips Corp., supra,* 109 F.R.D. 134, and *Camden Iron and Metal, Inc. v. Marubeni America Corp., supra,* 138 F.R.D. 438, represent an expansion of the definition of "control" which had previously existed in the cases. The traditional test has been "whether the party has a legal right to control or obtain [the documents]." *In re Folding Carton Antitrust Litigation,* 76 F.R.D. 420, 423 (N.D.Ill.1977), citing *Buckley v. Vidal,* 50 F.R.D. 271 (S.D.N.Y., 1970). *See also* Moore's Federal Practice, ¶ 34.17, p. 34–70–1. The Eleventh Circuit emphasized that the test was the "legal right to obtain the documents on demand" as recently as 1984. *Searock v. Stripling, supra,* 736 F.2d at 654.

■ In *Cooper Industries, Inc. v. British Aerospace, Inc., supra,* 102 F.R.D. 918, the Court abandoned the "legal right" test in a situation in which the defendant was the "distributor and servicer" of a British affiliate's planes and held that it was "inconceivable that defendant would not have access to these documents and the ability to obtain them for its usual business." *Id.* at 919–20. Thus, the test was "expanded" to include not only "legal right" but also "access to the documents" and "ability to obtain the documents." The Court in *M.L.C., Incorporated v. North American Philips Corp., supra,* 109 F.R.D. at 136–37 merely followed the expanded test enunciated in *Cooper* without comment. The same is true of the magistrate judge in *Camden Iron and Metal, Inc. v. Marubeni America Corp., supra,* 138 F.R.D. at 441, who wrote that "[c]ontrol is defined as the legal right, authority or ability to obtain documents on demand."

While I agree with counsel for Nixdorf–U.S. that these cases have expanded the definition of "control," I do not agree that the expanded test is invalid. In the absence of subsequent law to the contrary, I am pre-

pared to accept the expanded definition as a natural evolution of the legal concept and to apply it. The question remains, however, whether the expanded definition of "control" should be applied in a situation such as exists in the instant case in which the entity from whom discovery is sought is not a party to the litigation. In each of the cases cited by Addamax in its papers, the Court was concerned with discovery from the parents, subsidiary or affiliate of a *party* to the litigation. In fact, it can be argued that the expansion of the definition would not have occurred had the entity from whom discovery was sought was a non-party.

For example, in the case of *M.L.C., Incorporated v. North American Philips Corp., supra*, 109 F.R.D. at 138, the district judge found "control" in a situation in which the party claiming that it had no "control" over the documents in possession of parent was able to obtain documents from the parent to oppose a motion for summary judgment. Similarly, in the case of *Gerling International Insurance Co. v. Commissioner of Internal Revenue, supra*, 839 F.2d at 131, the Court, in addition to finding "control" under the "alter ego" doctrine, found control in the situation in which " . . . the subsidiary was an agent of the parent in the transaction giving rise to the suit and in litigating the suit on the parent's behalf." *Gerling International Insurance Co. v. Commissioner of Internal Revenue, supra*, 839 F.2d at 140 (emphasis supplied). Lastly, in the case of *General Environmental Science Corp. v. Horsfall*, 136 F.R.D. 130 (N.D.Ohio, 1991), the Court described the recent line of cases applying the expanded definition of "control" as cases in which

> . . . a number of courts have compelled a corporate **party** to a lawsuit to obtain documents in possession of a corporate nonparty where there existed a sufficient structural interlocking of the two companies.

*Id.* at 133 (emphasis supplied) citing *Gerling International Insurance Co. v. Commissioner of Internal Revenue, supra*, 839 F.2d at 140–1.

I have recognized that discovery permitted to be obtained from non-parties may be more limited in some circumstances than discovery permitted to be obtained from parties. *See Blount International, Ltd. v. Schuylkill Energy Resources, Inc.*, 124 F.R.D. 523, 526 (D.Mass., 1989) quoting from *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 232 (9 Cir., 1979) and citing *Dart Industries Co. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9 Cir., 1980); *Slater Steel, Inc. v. Vac–Air Alloys Corp.*, 107 F.R.D. 246, 248 (W.D.N.Y., 1985) and *Laxalt v. McClatchy*, 116 F.R.D. 455, 457 (D.Nev., 1986).

■ However, in determining whether one corporation has "control" over documents in the actual possession of another, I do not believe that the test for "control" should differ depending on whether the entity from whom discovery is sought is a party or nonparty. Rule 45(a)(1)(C), F.R.Civ.P., uses precisely the same phrasing, i.e., "documents . . . in the possession, custody and control" of the person or entity subpoenaed, as is used in Rule 34(a), F.R.Civ.P. There is nothing to indicate that the framers of the rules intended the identical phrases to have different meanings in the two different rules. In the absence of evidence of such an intention by the framers, I believe courts should be loath to define identical terms in two different rules differently.

That is not to say the counsel for Nixdorf–U.S. is incorrect when he avers that the 1991 amendments to Rule 45, F.R.Civ.P., were intended to provide greater protection to non-parties from whom discovery is sought. Rule 45(c)(3)(A)(iv), F.R.Civ.P., allows a court to quash or modify a subpoena if it " . . . subjects a person to undue burden." In its initial letter objection, Nixdorf–U.S. objected on the ground that the request is "overly broad and unduly burdensome." *See* # 139, Exh. B. However, this objection does not seem to have been pressed after the issues were narrowed by counsel during their conferences. The objection which remains is that Nixdorf–U.S. does not have "control" over the documents in the possession of Nixdorf–Germany. As indicated, *supra*, that contention is without merit in the case of OSF-related documents.

## IV.  CONCLUSION AND ORDER

For the reasons stated, it is ORDERED that Plaintiff Addamax Corporation's Motion to Compel Siemens Nixdorf Information Systems, Inc. to Produce Documents Pursuant to a Subpoena Duces Tecum (# 137) be, and the same hereby is, ALLOWED to the extent that Nixdorf–U.S.'s objection to producing OSF-related documents in the possession of Nixdorf–Germany is OVERRULED and that Nixdorf–U.S. is ORDERED, pursuant to Rule 37(a)(2), F.R.Civ.P., to produce to counsel for the plaintiff, *on or before the close of business on Friday, May 28, 1993,* all OSF-related documents in the files of Nixdorf–Germany.    It is FURTHER OR-DERED that Plaintiff Addamax Corporation's Motion to Compel Siemens Nixdorf Information Systems, Inc. to Produce Documents Pursuant to a Subpoena Duces Tecum (# 137) be, and the same hereby is, otherwise DENIED.