## WALTER J. STROM *vs.* AMERICAN HONDA MOTOR CO., INC.

Barnstable. May 6, 1996. - July 26, 1996.

Present (Sitting at Barnstable): LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, GREANEY, & FRIED, JJ.

*Practice, Civil,* Discovery. *Rules of Civil Procedure. Corporation,* Common ownership, Subsidiary. *Words,* "Control."

A Superior Court judge did not err in concluding that a civil defendant's responses to requests for production of documents were inadequate and in granting the plaintiff's motion to compel subject to the defendant offering objections to specific requests. [334-335]

Discussion of Federal decisions construing Fed. R. Civ. P. 34, which provides for discovery of documents and other matters in the "possession, custody or control" of the opposing party and, in particular, discussing the concept of "control" in the context of related corporate entities. [335-341]

This court rejected "legal right to control" as the test for determining whether, under Mass. R. Civ. P. 34 (a), a party may be made responsible for producing materials not in its actual possession or custody and adopted the rule that sufficient control for purposes of the rule is demonstrated in circumstances in which the party seeking discovery has met the burden of showing that the information sought from a corporate entity is in the possession or custody of a wholly (or virtually wholly) owning parent corporation or a wholly (or virtually wholly) owned subsidiary corporation or of a corporation affiliated through such a parent or subsidiary. [341-343, 344-345]

A corporate defendant was properly ordered to produce documents in the possession of other related and interlocking corporate entities pursuant to Mass. R. Civ. P. 34 (a), where the judge correctly concluded that the defendant had "control" over information sought that was in the possession of its corporate parent and affiliate. [343-344]

A Superior Court judge correctly ruled that the corporate disregard doctrine applies to questions of civil liability and is not applicable to defeat discovery from a party corporation's nonlitigating but related corporate entities. [344]

CIVIL ACTION commenced in the Superior Court Department on November 19, 1993.

A motion to compel discovery was heard by *Elizabeth J. Dolan,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Christopher J. Armstrong, J.,* in the Appeals Court. The Supreme Judicial Court transferred the case on its own initiative.

*David H. Sempert (Susan Donaldson Novins* with him) for the defendant.

*Scott L. Rubin* of Florida (*Joel D. Fogel & Terry L. Fogel,* of Florida, & *Richard Rougeau* with him) for the plaintiff.

*Richard P. Campbell & John A.K. Grunert* for Product Liability Advisory Council, Inc., amicus curiae, submitted a brief.

FRIED, J. In this product liability action, a Superior Court judge allowed the motion of the plaintiff, Walter J. Strom, to compel discovery of documents, and ordered the defendant, American Honda Motor Co., Inc. (AHM), to comply with the discovery requests subject to AHM's reasonable requests for clarification and specificity. AHM appealed from this order. AHM asserts that the plaintiff failed to comply with Rule 30A of the Rules of the Superior Court (1996), thus depriving AHM of proper notice. AHM further asserts that, even if the plaintiff properly followed the mandates of rule 30A, AHM nevertheless lacks the necessary "control" over those documents, as required by Mass. R. Civ. P. 34, as amended, 385 Mass. 1212 (1982), for the Superior Court properly to order AHM to produce those documents.

## I

In 1990, the plaintiff was injured in a motorcycle accident while operating a Honda motorcycle. The plaintiff brought suit in the Superior Court only against AHM, the United States distributor of the motorcycle, and sought to compel AHM to produce documents and information (discovery) in the possession of corporations related to it but not parties to this suit. The nonlitigating corporations are related to AHM as parent, subsidiary, and affiliate. Honda Motor Co., Ltd. (HMC), a Japanese corporation, is the parent corporation of AHM,[1] Honda R&D Co., Ltd. (Honda R&D), and Honda of

---

[1] Although the Superior Court judge did not explicitly find that HMC wholly owns AHM, AHM states in its brief that the fact that AHM "is a wholly-owned HMC subsidiary" is "not in dispute."

North America, Inc. (HNA).[2] Honda R&D is the Japanese corporation which designed the motorcycle, and HNA is the legal arm of HMC's North American enterprises. Honda of America Mfg., Inc. (HAM), an Ohio corporation which manufactured the motorcycle, is a subsidiary corporation of AHM.[3]

During discovery, the plaintiff sought documents and information from AHM, some of which were not in AHM's possession. AHM responded to the plaintiff's discovery requests with answers and such documents as were in its possession. The plaintiff, asserting that AHM maintained "control" over relevant discovery possessed by Honda R&D, HAM, HMC, "and any other similarly situated affiliate or subsidiary having possession of information relevant to the issues raised in this litigation," then moved for an order compelling AHM to produce such information and documents. The plaintiff's memorandum in support of his motion did not set forth, separately and in the order prescribed by rule 30A, the text of the interrogatory or request, the opponent's response, and an argument. AHM responded by asserting that the motion should be denied, because: first, the motion fails to identify sufficiently the information sought and to specify the inadequacies in AHM's responses, as required by rule 30A; second, whether or not AHM controls the information; the equitable doctrine of corporate disregard precludes efforts to compel AHM to obtain the information from the nonlitigating corporations; and third, AHM lacks the requisite control over the information as AHM does not have the legal right to obtain it. The judge addressed the equitable doctrine of corporate disregard first, holding that the corporate disregard doctrine applies to questions of liability and cannot be invoked to defeat discovery. The judge then found that AHM's response to discovery was inadequate, whether or not AHM controlled the documents sought, because the judge found that: first, AHM at least knew the location of the documents

---

[2]Although the plaintiff did not mention HNA in his motion to compel, the plaintiff did denominate in his motion to compel, "other similarly situated HONDA entities."

[3]The Superior Court judge found "a sharing of the stock ownership of HAM by HMC and AHM."

and failed to state that information in detail[4]; and second, AHM failed even to attempt to obtain the documents.[5] The judge then addressed the control issue, and, examining the nature of AHM's control over information possessed by each of AHM's parent, affiliates, and subsidiary, found that AHM exerted sufficient control that AHM should be compelled to obtain the discovery.

With regard to the defendant's control over information in its parent's (HMC's) possession, the judge found that the "[p]laintiff's example of inter-corporate cooperation in the [National Highway Traffic Safety Administration] investigation . . . [shows] that when needed, [AHM] had access to the documents in its parent's possession and the ability to obtain them," and therefore the plaintiff satisfied the control requirement for discovery purposes. With regard to the defendant's control over information in its corporate affiliates' (Honda R&D's and HNA's) possession, the judge found that the "[p]laintiff has made a prima facie showing that the various Honda affiliates are structurally interlocked, via its showing of the parent corporation's consolidated financial statement, which eliminates inter-corporate accounts and transactions and reflects that the various affiliates operate as interrelated departments of the corporate parent, HMC." With regard to the defendant's control over information in its corporate subsidiary's (HAM's) possession, the judge found that "the law clearly grants AHM 'control' over such information."

The judge then addressed the rule 30A specificity issue and dismissed AHM's argument, ruling that whatever difficulties lack of specificity might pose "can be addressed to those particular [i]nterrogatories or [r]equests for [p]roduction which [AHM] can justifiably argue are vague, overbroad or burdensome."

AHM appealed from this order to a single justice of the Appeals Court, pursuant to G. L. c. 231, § 118, first par.

---

[4]The judge found that AHM's "vague response" to the plaintiff's request to identify the location of documents, "reveals that [AHM] knows which entities possess the information sought" but rendered insufficiently detailed responses to the plaintiff's request to identify adequately information sources.

[5]The judge found that AHM's failure to "attempt to obtain the documents by making demand upon its corporation affiliates, subsidiaries or parent for this information" rendered its lack of control argument "not dispositive."

(1994 ed.). Asserting that the "unprecedented and onerous scope of [the discovery] order is contrary to the applicable rules of discovery, and violates the well-settled law of corporate separateness," AHM requested that the single justice "reverse and vacate" the discovery order. Although the single justice denied the particular relief sought, due to the "practical importance" of the question raised, the single justice authorized AHM to seek interlocutory appeal. AHM sought interlocutory appeal in the Appeals Court, and we transferred the case here on our own motion.

## II

### A

AHM asserts before this court that the Superior Court judge erred in granting the plaintiff's motion to compel where the plaintiff failed to comply with rule 30A.[6] Although "[i]ndividual judges have no power to dispense with rules lawfully adopted for the conduct of the business of the courts," *Carp* v. *Kaplan*, 251 Mass. 225, 228 (1925), the instant appeal does not present such a problem, because resolution of the question of control in this case is a necessary prerequisite to proper discovery.

In its general objection to the plaintiff's discovery requests, AHM stated that it "also objects to [discovery requests] that purport to call for information or documents in the possession, custody or control of others . . . and to impose such an obligation upon [AHM] is beyond the scope of permissible discovery." Thus, before proper, traditional rule 30A discovery motions and sanctions can be had, the judge must decide the control issue and determine from which nonlitigating corporations AHM must obtain discovery. Therefore, we conclude that the Superior Court judge properly accepted the plaintiff's motion on the condition that "[d]efendant's arguments as to the lack of specificity in plaintiff's motion to compel can be addressed to those particular [i]nterrogatories

---

[6]Rule 30A of the Rules of the Superior Court (1996) provides that: "All motions arising out of a party's . . . asserted failure to comply with[] a request for production of documents shall be accompanied by a brief. With respect to each . . . request at issue, the brief shall set forth separately and in the following order (1) the text of the interrogatory or request, (2) the opponent's response and (3) an argument."

or [r]equests for [p]roduction which defendant can justifiably argue are vague, overbroad or burdensome."

### B

Rule 34 (a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 792 (1974), allows a party to seek documents and other matters in the "possession, custody or control" of the opposing party. This rule is identical to Fed. R. Civ. P. 34 (1995). The crux of this case is AHM's contention that, as to material in the possession or custody either of its parent corporation, HMC, its affiliated corporations, Honda R&D and HNA, or of its subsidiary, HAM, the Superior Court may only find "control" for purposes of rule 34 if the plaintiff demonstrates that AHM has the "legal right to obtain the [discovery] on demand."

### 1

This is a question of considerable importance to the practical administration of discovery in our courts, and we have never addressed it. "Because the Massachusetts Rules of Civil Procedure are patterned after the Federal rules, we interpret our rules consistently with the construction given their Federal counterparts," *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 800 (1987), "absent compelling reasons to the contrary or significant differences in content," *Rollins Envtl. Servs., Inc.* v. *Superior Court*, 368 Mass. 174, 180 (1975). See *Giacobbe* v. *First Coolidge Corp.*, 367 Mass. 309, 315-317 (1975). We follow the course of Federal decisions where they seem sensible, primarily because of the desirability of national uniformity, particularly in a matter such as this, which is likely to involve litigants with contacts in many jurisdictions.

The early pronouncements of the Supreme Court of the United States have provided the touchstone for interpreting the discovery rules. The Supreme Court has stated that "[m]odern instruments of discovery serve a useful purpose . . . . They together with pretrial procedures make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States* v. *Procter & Gamble Co.*, 356 U.S. 677,

682 (1958).[7] " 'Discovery' is one of the working tools of the legal profession. . . . It seems clear and long has been recognized that discovery should provide a party access to anything that is evidence in his case." *Hickman* v. *Taylor,* 329 U.S. 495, 515 (1947) (Jackson, J., concurring). Thus, "civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial. . . . [T]he deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Id.* at 501, 507. These are the generalities that we must keep in mind in assessing the alternative interpretations of the rule.

The clear trend in the Federal decisions rejects the "legal right to control" test for determining whether a party from whom discovery is sought has the requisite "control" of the material requested. "The concept of 'control' is very important in applying the rule, but the application of this concept is often highly fact-specific." 8 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2210, at 397 (1994). Federal courts construe "control" very broadly under the Federal rules. See, e.g., *Scott* v. *Arex, Inc.,* 124 F.R.D. 39, 41 (D. Conn. 1989). Certainly, the concept of control embraces the legal right to obtain the information. See, e.g., *Searock* v. *Stripling,* 736 F.2d 650, 653 (11th Cir. 1984); *Henderson* v. *Zurn Indus.,* 131 F.R.D. 560, 567-568 (S.D. Ind. 1990). Courts have, however, interpreted this obligation to require that, even though the party from whom information is sought might not have the legal right to obtain information, that party must nevertheless make a good faith effort to obtain it. See *Searock* v. *Stripling, supra* at 654 ("primary dispositive issue is whether Stripling made a good faith effort to obtain the

[7]The Court has also stated that "[t]he various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under [Fed. R. Civ. P.] 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues." *Hickman* v. *Taylor,* 329 U.S. 495, 501 (1947).

documents over which he may have indicated he had 'control' in whatever sense, and whether after making such a good faith effort he was unable to obtain and thus produce them"); *Scott* v. *Arex, Inc., supra* at 41 (party must attempt to obtain documents, or inform plaintiff's counsel by affidavit of "what precisely attempts [he] made to obtain those documents, when he made them, and to whom his demands were addressed"); *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 423 (N.D. Ill. 1977) ("At the very least, defendants should make inquiry of such former employees. . . . If the former employees do not cooperate, we can then consider what further action may be required"). Where a corporate party is related to the entity that actually possesses the information, "[r]ather than adopting an overarching rule for such situations, the courts have tended to focus on the facts shown in a particular case." 8 C.A. Wright & A.R. Miller, *supra* at § 2210, at 399.

Where the litigating corporation is a subsidiary of the corporation possessing the documents, the court in *Camden Iron & Metal, Inc.* v. *Marubeni America Corp.*, 138 F.R.D. 438, 442 (D.N.J. 1991), ruled that "the determination of control turns upon whether the intracorporate relationship establishes some legal right, authority *or* ability to obtain the requested documents on demand" (emphasis in original). This conclusion traces back to a series of cases interpreting control in the context of a parent-subsidiary relationship. See *Addamax Corp.* v. *Open Software Found., Inc.*, 148 F.R.D. 462, 468 (D. Mass. 1993) (finding control under "expanded definition of 'control' " and compelling nonparty witness to produce documents possessed by nonparty witness's parent); *Afros S.P.A.* v. *Krauss-Maffei Corp.*, 113 F.R.D. 127, 130, 132 (D. Del. 1986) (setting forth three-part test for control; finding "nature of relationship" between litigating corporation and foreign parent sufficiently close to hold subsidiary "has control" of requested documents); *M.L.C., Inc.* v. *North Am. Philips Corp.*, 109 F.R.D. 134, 138 (S.D.N.Y. 1986) ("[t]his Court's finding that [the defendants] had control over the Agreements is further supported by defendants' ability to easily obtain these Agreements when it was in their interest to do so"); *Cooper Indus.* v. *British Aerospace, Inc.*, 102 F.R.D. 918, 919-920 (S.D.N.Y. 1984) (finding control where, at the time "law suit was filed, defendant was wholly owned by the [nonlitigating] British affiliate" and "[t]he documents plaintiff

seeks all relate to the planes that defendant works with every day; it is inconceivable that defendant would not have access to these documents and the ability to obtain them for its usual business"). See also *Gerling Int'l Ins. Co.* v. *Commissioner of Internal Revenue*, 839 F.2d 131, 141 (3d Cir. 1988) (noting that "[w]here the relationship is thus such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party"). Where the litigating corporation is a wholly owning parent of the corporation possessing the documents, the parent must produce those documents for discovery. See *United States* v. *International Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) (noting that "corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls"); *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1152 (N.D. Ill. 1979) (parent responsible for documents possessed by wholly owned subsidiary but not documents possessed by 43.8%-owned subsidiary which conducted its corporate affairs separately; evidence that subsidiary and parent once removed "operated as a single functional unit in all aspects of their uranium business" justifies compelling production of discovery); *Camden Iron & Metal, Inc.* v. *Marubeni America Corp.*, *supra* at 441 (noting that "courts have held that a litigating parent corporation has control over documents in the physical possession of its subsidiary corporation where the subsidiary is wholly owned or controlled by the parent"); *Hubbard* v. *Rubbermaid, Inc.*, 78 F.R.D. 631, 637 (D. Md. 1978) (parent ordered to produce documents possessed by wholly owned subsidiary); *American Honda Motor Co.* v. *Votour*, 435 So. 2d 368, 369 (Fla. Dist. Ct. App. 1983) ("it is not unreasonable to require the parent corporation, engaged in litigation, to produce records of its wholly owned subsidiary").

The few cases involving sister corporations lead to a similar conclusion. See, e.g., *Alimenta (U.S.A.), Inc.* v. *Anheuser-Busch Cos.*, 99 F.R.D. 309, 313 (N.D. Ga. 1983) (control established where two sister corporations had "acted 'as one' in the transaction at issue"). Cf. *Societe Internationale Pour Participations Industrielles et Commerciales, S.A.,* v. *Rogers,*

357 U.S. 197, 200 (1958) (substantially identical firms); *Perini America, Inc.* v. *Paper Converting Mach. Co.*, 559 F. Supp. 552, 552-553 (E.D. Wis. 1983) (where one man owned all the stock of one corporation and 99.5% of the stock of the other, "[t]o treat them as unrelated entities would defy reality"). But see *Gerling Int'l Ins. Co.* v. *Commissioner of Internal Revenue*, 839 F.2d 131, 141 (3d Cir. 1988) (no control established where no finding that corporations disregarded separateness or that one corporation had acted to benefit the other in the transactions giving rise to the litigation); *Pennwalt Corp.* v. *Plough, Inc.*, 85 F.R.D. 257, 263 (D. Del. 1979) (refusing to order production of documents possessed by nonparty affiliate absent a showing of identical boards of directors or sufficiently intertwined business operations "as to render meaningless their separate corporate identities"; observing that "[s]ince Schering [the corporation possessing the documents sought, was] a separate legal entity from Plough, possibly having different legal and commercial interests at stake, its rights should not be determined *in absentia*" [emphasis in original]).

Thus, the factors which Federal courts have considered in determining whether rule 34 control exists include: "the degree of ownership and control exercised by the [litigating corporation over the nonlitigating corporation], a showing that the two entities operated as one, demonstrated access to documents in the ordinary course of business, . . . an agency relationship," *Camden Iron & Metal, Inc.* v. *Marubeni America Corp.*, *supra* at 442, "the corporate structure encompassing the different parties . . . [,] the non-party's connection to the transaction at issue . . . [, and] to what degree will the non-party receive the benefit of any award in the case," *Afros S.P.A.* v. *Krauss-Maffei Corp.*, 113 F.R.D. 127, 130 (D. Del. 1986). AHM argues that this expanded test is improper and that *Gerling Int'l Ins. Co.* v. *Commissioner of Internal Revenue*, *supra* at 140-141; *Searock* v. *Stripling*, *supra* at 653; and particularly *Chaveriat* v. *Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993), all hold that the test for control is the "legal right to obtain the documents on demand." None of these cases is apposite here, because none examines the requirement of control where discovery is sought from a corporation, and the materials are in the possession of other corporate entities with which it shares common ownership.

As the court in *Camden Iron & Metal* pointed out, "*Gerling* examined control in the context of a relationship between a litigating corporation and its president." *Camden Iron & Metal, Inc.* v. *Marubeni America Corp., supra* at 442. In *Searock* v. *Stripling, supra*, Stripling had been sanctioned by dismissal of his counterclaim when he failed to produce documents in the possession of entities which had supplied labor and materials to him, but which had no other relation to him and no reason at all to cooperate in the suit. Although the *Searock* court stated, without citing authority, that "[c]ontrol is defined not only as possession, but as the legal right to obtain the documents requested upon demand," *id.* at 653, the court found "that the primary dispositive issue is whether Stripling made a good faith effort to obtain the documents over which he may have indicated he had 'control' in whatever sense, and whether after making such a good faith effort he was unable to obtain and thus produce them." *Id.* at 654. Finally, AHM places its heaviest emphasis on *Chaveriat* v. *Williams Pipe Line Co., supra*. The court in *Addamax Corp.* v. *Open Software Found., Inc.*, 148 F.R.D. 462, 467-468 (D. Mass. 1993) stated that, "[i]n the absence of subsequent law to the contrary, I am prepared to accept the expanded definition as a natural evolution of the legal concept and to apply it."[8] AHM asserts that *Chaveriat* is that "subsequent law to the contrary," and that *Chaveriat* upheld the "legal right to demand" test, "flatly reject[ing]" the expanded test. The *Chaveriat* court stated that, "the fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means just the opposite." *Id.* at 1427. But *Chaveriat* did not address the situation of related corporate entities. Rather, *Chaveriat* dealt with separate corporations, where the entity possessing the materials had had a prior contractual relationship with the litigating party against whom the discovery demand was made, but no pres-

---

[8]The *Addamax* court concludes that the courts in *Cooper Indus.* v. *British Aerospace, Inc.*, 102 F.R.D. 918 (S.D.N.Y. 1984), *M.L.C., Inc.* v. *North Am. Philips Corp.*, 109 F.R.D. 134 (S.D.N.Y. 1986), and *Camden Iron & Metal, Inc.* v. *Marubeni America Corp.*, 138 F.R.D. 438 (D.N.J. 1991), have expanded the control test "to include not only 'legal right' but also 'access to the documents' and 'ability to obtain the documents.' " *Addamax Corp.* v. *Open Software Found., Inc.*, 148 F.R.D. 462, 467 (D. Mass. 1993).

ent tie or incentive to assist either party to the dispute. *Id.* at 1423, 1426-1427.

## 2

We reject, as does the clear trend in the Federal cases, "legal right to control" as the test for determining whether, under rule 34 (a), a party may be made responsible for producing materials not in its actual "possession [or] custody." The legal right to control test may appear to have the virtue of easy application, avoiding the need for extensive collateral adjudication.[9] The test may appear simple, requiring only that we ascertain whether, in other contexts and for other purposes, a party has the legal right to compel access to material from an unwilling third party in order to answer the question posed under rule 34. By contrast a test such as that relied on by the plaintiff, which may require a case-specific weighing of a variety of factors, may seem unduly uncertain and manipulable. Since we reject the defendant's proposal it is well to address this general claim at the outset.

First, the legal right to control may not be as easily and mechanically administrable as claimed. Indeed, it may be an example of explaining the obscure by the more obscure, since answering the question whether a party has such legal right to control may take a court into legal byways far removed from the purposes of the rule and the circumstances of the particular case.

Nor is the alternative test necessarily so troublesomely indefinite. At least in cases such as this, where the nonlitigating corporations from whom information is sought are related to the defendant through a single line of wholly common ownership, the issue of control readily resolves in favor of the party seeking that information. Where the ownership relations are complicated by the significant interests of extraneous entities, the issue does indeed become difficult, but not necessarily more difficult than the complexities a legal right to control inquiry might entail. But most importantly, the right to control test may often frustrate the policy behind the rule. Where the information sought is in the possession of a wholly owned subsidiary, the right to control is relatively straightforward,

---

[9]This is one of the contentions in the amicus brief filed by Product Liability Advisory Council, Inc.

see, e.g., *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1152 (N.D. Ill. 1979); *Hubbard* v. *Rubbermaid, Inc.*, 78 F.R.D. 631, 637 (D. Md. 1978); *American Honda Motor Co.* v. *Votour*, 435 So. 2d 368, 369 (Fla. Dist. Ct. App. 1983), but when it is a parent or another subsidiary of the same parent who has the information — as is also the case here — the right to control rule might too easily permit the dispersion of relevant information, requiring resort to unnecessarily protracted subpoena proceedings under Rule 45 of the Massachusetts Rules of Civil Procedure, 365 Mass. 809 (1974). See *Cooper Indus.* v. *British Aerospace Inc.*, 102 F.R.D. 918, 920 (S.D.N.Y. 1984) ("Defendant cannot be allowed to shield crucial documents from discovery by parties with whom it has dealt in the United States merely by storing them with its affiliate abroad. . . . If defendant could so easily evade discovery, every United States company would have a foreign affiliate for storing sensitive documents"); *Kozlowski* v. *Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976) ("defendant may not excuse itself from compliance with Rule 34, Fed.R.Civ.P., by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition").

The rule we adopt today attributes sufficient control for purposes of requiring discovery whenever the claimant has met his burden of showing that the information sought is in the possession or custody of a wholly owning parent (or virtually wholly owning) or wholly owned (or virtually wholly owned) subsidiary corporation, or of a corporation affiliated through such a parent or subsidiary. We do not hold that such a relationship is necessary to a finding of control, only that it is sufficient. We acknowledge that the Federal cases do not go so far as to articulate such a rule, see, e.g., *Camden Iron & Metal, Inc.* v. *Marubeni America Corp.*, 138 F.R.D. 438, 441-442 (D.N.J. 1991); 8 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2210, at 399-402 (1994), but we think it is the clear entailment of the trend we discern. For this reason we see no virtue in prolonging the uncertainty implicit in an open-ended rule when it is possible to identify a definite class of cases in which a more determinate rule can be formulated.

There may be other circumstances in which the party from which the information is sought may fairly be found to be in the best position to obtain it, as where the two entities regularly share information for other purposes. We do not need to anticipate the full range of such cases, but only indicate the general considerations that bear on their resolution.

In ruling that a party, situated as is AHM in this case, is subject to discovery of materials in the possession of related corporations we certainly further the purpose of rule 34 as first stated by the Supreme Court of the United States. To rule otherwise would be to reward corporations that disperse potentially useful information among related entities. When it suits their purposes they will share that information, but when adverse parties seek it out they would be able to throw up serious and perhaps impenetrable barriers to effective discovery. That is not what the rule contemplates. In its amicus brief, the Product Liability Advisory Council, Inc., argues that this kind of stalling device is not really what it defends, but only that the plaintiff erred by proceeding under Mass. R. Civ. P. 34 instead of under Mass. R. Civ. P. 45, that allows the court to issue a subpoena to third parties to produce information. This contention is unconvincing. If the material is as readily available by the subpoena process, it is hard to see why AHM should insist that it be used. If, on the other hand, the use of discovery is procedurally simpler, then that is a sufficient reason to allow its use.

Of course, rule 34 cannot be used where rule 45 is the only available means, as where the third party is truly a stranger to the proceedings and for that reason is entitled to a greater measure of protection before he is drawn into the dispute. But such a claim is quite inapposite in respect to parent, subsidiary, and affiliate corporations. The same is true for the claim that it is unfair to put an entity in the defendant's position under the gun of sanctions for the possible refusal of another corporate entity. If the corporate entities are related as they are here, the defendant is not at all being made the hostage for the compliance of a party for whose recalcitrance it is not responsible. Consider the extreme sanction that might be visited on the defendant here: that judgment be entered against it. Given the relation between the corporations involved, that is a consequence that ultimately falls on the

corporate parent. Perhaps the defendant will fail to prevail on its parent to supply the needed information, and the defendant's officers sincerely wish and have attempted to secure the parent's compliance. It is the parent that has decided that it is worth visiting this dire consequence on its subsidiary, and the subsidiary may complain to it, but not to us, if the subsidiary must suffer that consequence. In this sense the defendant's vulnerability gives it all the leverage over its parent that the concept of control requires. It requires no great effort to extend the logic of this argument to subsidiaries and affiliates.

The parties here each argue the bearing of the doctrine of "corporate disregard" on this question: whether the conditions obtain for piercing the corporate veil between these corporate entities, and whether the disposition of the law to respect corporate distinctness does not compel a result favoring the defendant. See *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 619 (1968). The Superior Court dealt with this issue correctly. The doctrine of corporate disregard relates to the quite distinct issue whether the effects of liability of one corporate entity should be visited upon a related entity. Corporate distinctness is respected as a means of limiting liability and thus fostering investment in corporate enterprises. As applied to the sharing and transmittal of materials sought in litigation, the doctrine is inapposite. Indeed, the integrity of the corporate veil here overcomes some of the unfairness of which an entity in the defendant's position might complain: the financial burden of sanctions or of a lost law suit will fall entirely upon it, and the related entities will suffer only insofar as they are content to let their investment in the litigant diminish in value. The choice is theirs.[10]

Finally, we note that "a party seeking production of documents bears the burden of establishing the opposing party's control over those documents." *Camden Iron & Metal, Inc.*

---

[10]The suggestion in the amicus brief that the rule we adopt does not adequately protect the interests of third parties, and that a subpoena under rule 45 properly focuses such concerns is not apposite here, where we consider the situation of closely related corporate entities, which is the only concrete case we decide today. In other contexts the requisite control might well be found absent or there may be a question as to what sanctions are fair where the nonlitigating party does not have such a clear stake in the outcome of the law suit. Those questions remain open.

v. *Marubeni America Corp.*, *supra* at 441, citing *United States* v. *International Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989). It is up to the party seeking discovery to demonstrate the corporate structure that brings our rule into play. Where control is predicated on less determinate factors, such as a practice of sharing information or other relations of close collaboration, the burden on the party seeking the discovery is properly greater. It must not only demonstrate that the relationship exists but also why it confers control for the purposes of obtaining the requested materials.

## III

As we noted at the outset, the plaintiff's discovery demand was very general and the form of his demand did not comply with Rule 30A of the Rules of the Superior Court. That was because the plaintiff believed he was blocked by the defendant's blanket claim that it had no duty to produce, much less cooperate in the production of, materials not in its actual possession. Indeed, the defendant even denied any obligation to identify which of its related corporations might have the desired materials. Now that this obstacle is removed and the defendant is aware of the extent of its obligations, discovery may proceed in the normal course with the plaintiff specifying so far as he can what materials he is seeking and the defendant making whatever request for further specification as may be appropriate.

We remand the case for proceedings consistent with this opinion.

*So ordered.*