SUPERIOR COURT 
 
 ARCTARIS OPPORTUNITY ZONE FUND 2020, LLC v. LC BALTIMORE 1B LLC, LC BALTIMORE DEVELOPMENT, LLC, AND LA CITÉ, LLC, DEFENDANTS; AND WELLS FARGO BANK, N.A., AS TRUSTEE

 
 Docket:
 2484CV02069-BLS2
 
 
 Dates:
 February 10, 2025
 
 
 Present:
 Kenneth W. Salinger Justice of the Superior Court
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 FINDINGS, DECISION, AND ORDER ON CROSS-MOTIONS SEEKING PRELIMINARY INJUNCTIONS
 
 

 Arctaris Opportunity Zone Fund 2020, LLC (“Arctaris”) is one of several funds managed by a Boston-based impact investment firm that seeks to have a positive social impact, while aiming for above-market returns, by investing in businesses and projects in underserved communities. Arctaris teamed up with La Cité, LLC, an experienced real estate developer based in New York City, to build age-restricted senior housing with retail space in Baltimore, Maryland.
Arctaris and LC Baltimore 1B LLC (“LCB”), a special purpose entity controlled by La Cité, became the only members of the entity that owned the property, which changed its name to Phase 1B Holdings, LLC (the “Company”). Arctaris committed most of the Company’s initial funding and became its “Investor Member.” LCB became “Managing Member,” with sole responsibility for planning, securing construction financing for, and implementing the Project. La Cité is the sole member and managing member of LCB. LC Baltimore Development, LLC (“LCB Development”) became the Project’s “Developer.”
The Project has not gone well. The operating agreement called for construction to begin by early 2024. But LCB has not obtained necessary financing or started construction. The parties blame each other. Arctaris gave notice eleven days ago that it was exercising a contractual right to replace LCB and take over as Managing Member, and to replace LCB Development as Developer.
Arctaris has now moved for a preliminary injunction to bar Defendants from exercising control over, participating in the management of, or transacting any business for the Company. Defendants responded with their own motion seeking to bar Arctaris from removing “Defendants” as Managing Member of the Company. The Court will deny Defendants’ motion for a preliminary injunction and treat it as an initial memorandum in opposition to Arctaris’s motion. The Court will exercise its discretion to allow Arctaris’s motion.
 
                                                            -1-
 
Although the Company’s operating agreement states that it is governed by Delaware law, the parties do not contend that there is any material difference between Delaware and Massachusetts law for purposes of deciding the cross- motions for preliminary injunctive relief. The Court may therefore apply Massachusetts or Delaware law without conducting any choice of law analysis. “Only actual conflicts between the laws of different jurisdictions must be resolved.” UBS Financial Services, Inc. v. Aliberti, 483 Mass. 396, 405 n.12 (2019), quoting Kaufman v. Richmond, 442 Mass. 1010, 1012 (2004) (rescript). “Choice of law analysis is unnecessary when that choice will not affect the outcome of the case.” Kaufman, supra.
1. Defendants’ Motion for a Preliminary Injunction. Defendants are not entitled to seek a preliminary injunction because they never asserted any claims or counterclaims against Arctaris. In any case, Defendants have not shown that they would be likely to succeed if they were to assert a counterclaim seeking to bar LCB’s removal as Managing Member of the Company. So they would not be entitled to a preliminary injunction even if they had asserted such a claim.
1.1. No Injunction without an Underlying Claim. One of the things that a party seeking preliminary injunctive relief must show is “a likelihood of success on the merits of the underlying claim.” Wilson v. Commissioner of Transitional Assistance, 441 Mass. 846, 860 (2004).
The filing of a meritorious claim or counterclaim is therefore a condition precedent to seeking injunctive relief. See, e.g., Litton Industries, Inc. v. Colon, 587 F.2d 70, 74 (1st Cir. 1979) (injunction “must be based on a valid cause of action alleged in the complaint”); Goerlitz v. City of Maryville, 333 S.W.3d 450, 455 (Mo. 2011) (en banc) (“an injunction is a remedy and not a cause of action; therefore, it must be based on some recognized and pleaded legal theory”); see also Mullins v. Corcoran, 488 Mass. 275, 286 n.16 (2021) (“Injunctive relief is a remedy, and not a cause of action.”); In re Transunion Derivative Stockholder Litigation, 324 A.2d 869, 882 (Del. Ch. 2024) (same).
Defendants cannot demonstrate a likelihood of success on the merits as to a claim that they have not asserted. “[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action…. ‘There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny’ ” if challenged on a motion to dismiss under Rule 12(b)(6) for failure to state a claim. Alabama v.
 
                                                            -2-
 
U.S. Army Corps of Engineers, 424 F.3d 1118, 1127 (11th Cir. 2005), quoting Klay v. United Healthgroup, Inc. 376 F.3d 1092, 1097 (11th Cir. 2004).
In footnote 1 to their cross-motion, Defendants say they filed their motion “to ensure the Court was aware of Plaintiff’s [alleged] breaches” of contract. The Court will therefore treat Defendants’ cross-motion as an initial memorandum in opposition to Arctaris’s motion. Indeed, Defendants subsequently filed an opposition memorandum that repeats and expands upon the points that Defendants first made in support of their cross-motion for injunctive relief.
1.2. No Injunction without any Likelihood of Success. It would have made no difference if Defendants had asserted a counterclaim challenging Arctaris’s decision to remove LCB as Managing Member of the Company. As discussed below, the Court finds that it is extremely likely that Arctaris will prevail on its claims, including its claim that Arctaris had a contractual right to remove LCB as Managing Member. The flip side is that it is quite unlikely that Defendants could prevail on a counterclaim challenging LCB’s removal.
Since Defendants cannot prove they would be likely to succeed on the merits of a claim that Arctaris had no contractual right to remove LCB as Managing Member, Defendants would not be entitled to a preliminary injunction even if their motion had been based on an actual counterclaim. See, e.g., Fordyce v. Town of Hanover, 457 Mass. 248, 265 (2010) (vacating preliminary injunction); Wilson v. Comm’r of Transitional Assistance, 441 Mass. 846, 858–859 (2004) (same). In the absence of a showing that the party seeking a preliminary injunction has a likelihood success on the merits, “the remaining factors become matters of idle curiosity.” Lieber v. President and Fellows of Harvard College, 488 Mass. 816, 822 (2022), quoting Foster v. Commissioner of Correction, 484 Mass. 698, 712 (2020), quoting in turn Maine Educ. Ass’n Benefits Trust v. Cioppa, 695 F.3d 145, 152 (1st Cir. 2012).
2. Arctaris’s Motion for a Preliminary Injunction. The Court will exercise its discretion to allow Arctaris’s motion for preliminary injunctive relief. Cf. Lightlab Imaging, Inc. v. Axsun Technologies, Inc., 469 Mass. 181, 194 (2014) (“Trial judges have broad discretion to grant or deny injunctive relief.”). “To obtain a preliminary injunction, the applicant must show a likelihood of success on the merits of the underlying claim; actual or threatened irreparable harm in the absence of injunction; and a lesser degree of irreparable harm to the opposing party from the imposition of an injunction.” Wilson, 441 Mass. at 860. Arctaris has met that burden.
 
                                                            -3-
 
The Court will revise the proposed order submitted by Arctaris to make it a self-contained document that does not refer to the Company’s operating agreement. An injunction must “describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained.” See Mass. R. Civ. P. 65(d).
The Court concludes in the exercise of its discretion that Arctaris need not post a bond, as Defendants have not asked for one. Cf. Petricca Const. Co. v. Commonwealth, 37 Mass. App. Ct. 392, 400–401 (1994) (court has discretion to issue preliminary injunction without requiring moving party to post security, and judge did not abuse that discretion where non-moving party made no request for security).
2.1. Findings of Fact. The Court makes the following findings of fact based on the affidavits of Nihar Sait (who is a Managing Director of Arctaris Impact Investors, LLC, which in turn manages the Arctaris fund that brought this lawsuit), the affidavits of Ian Arias (who is Executive Vice President and Co- Founder of La Cité), and the documents provided by the parties. The Court credits the affidavits of Mr. Sait. It does not credit any assertions in Mr. Arias’s affidavits, or in emails or other communications by any of the Defendants, that are inconsistent with the Court’s findings below.[1]
Arctaris and La Cité, acting through LCB, agreed to develop the Project together. La Cité is the sole member and managing member of LCB. Arctaris contributed most of the Company’s initial capital and holds a 78.3 percent ownership interest in the Company.
The Company’s November 2022 operating agreement made Arctaris the Investor Member of the Company, LCB the Managing Member, and LCB Development the Developer of the Project. This agreement providing that LCB, as Managing Member, was responsible for managing all aspects of the Project, including obtaining construction financing and ensuring that construction began no later January 31, 2024.
 
--------------------------------------------
 
[1] When considering sworn affidavits, “the weight and credibility to be accorded those affidavits are within the judge’s discretion” and “[t]he judge need not believe such affidavits even if they are undisputed.” Commonwealth v. Furr, 454 Mass. 101, 106 (2009). An affidavit “is a form of sworn testimony the credibility of which is to be determined by the judge.” Psy-Ed Corp. v. Klein, 62 Mass. App. Ct. 110, 114 (2004).
 
                                                            -4-
 
As permitted in the Operating Agreement, Arctaris paid its entire capital contribution up front, but placed about half of that amount in an account controlled by Arctaris, to be released as certain benchmarks were met. LCB submitted period draw requests asking Arctaris to release additional funds
LCB submitted Draw 4, seeking payment of invoices totaling about $80,000, in May 2023. Soon thereafter Arctaris realized that LCB had included $16,000 in political contributions as part of its payment requests in Draws 1 and 2. LCB told La Cité that it would need to deduct that amount from the Draw 4 request. LCB refused to do so until November 2023. As soon as La Cité provided an updated requisition netting out the $16,000, Arctaris approved payment.
The Court finds that the delay in approving the small amount ultimately requested in the revised Draw 4 did not delay the Project and did not cause LCB to miss the deadline for beginning construction. For example, the backup for Draw 5 (submitted in early October 2023) confirms that the architectural firm was continuing its work.
The Court also finds that Arctaris is not to blame for LCB’s failure to hire a construction manager for the Project. It credits Mr. Sait’s testimony, which is supported by contemporaneous email communications, showing that La Cité’s own lack of diligence from May 2023 through February 2024 caused LCB to lose out on the opportunity to retain GreenBench. It also credits Mr. Sait’s testimony explaining why La Cité is responsible for any delay thereafter in retaining Orr Partners as construction manager.
La Cité told Arctaris on July 26, 2024, that LCB did not expect to be in a position to obtain financing and begin construction until the first quarter of 2025.
So, on July 31, 2024, Arctaris served a combined “Default Notice” and “Forced Sale Trigger Notice” on LCB, through La Cité. This letter asserted that LCB’s failure to begin construction by July 31, as well as Arctaris’ determination that the Project will not be able to receive a construction loan, were both “Forced Sale Events.” In other words, Arctaris was seeking to invoke its right under the Company’s operating agreement to force LCB either to purchase Arctaris’s interest in the Company or to sell the Project to a third-party on an arm’s-length basis. The Court finds that the operating agreement gave Arctaris the right at that time to compel LCB either to buyout Arctaris or to sell the Project, because LCB had failed to begin construction of the Project by July 31.
Arctaris filed this lawsuit six days later, on August 6, 2024.
 
                                                            -5-
 
The parties resolved Arctaris’s first motion for a preliminary injunction on August 21, 2024, by entering into a Stipulation that, among other things, required Defendants either to commence an arbitration as to the validity of the Forced Sale Notice, or to provide a “Forced Sale Election Notice” stating whether LCB was opting to buyout Arctaris or to sell the Project, no later than August 30. The Stipulation provided that if Defendants wished to dispute the validity of the Forced Sale Trigger Notice, and challenge Arctaris’s assertion that LCB had breached its obligations under the operating agreement, then Defendants could demand arbitration under § 11.06 of the operating agreement to resolve that issue so long as they did so “on or before August 30, 2024.”
Defendants opted not to challenge Arctaris’s determination that LCB’s failure to begin construction of the Project by July 31, 2024, was a default that constituted a Forced Sale Event. Instead, LCB served its Forced Sale Election Notice on August 30, 2024, stating that LCB elected to buy Arctaris’s interest in the Company rather than sell the Project. LCB said it calculated the required purchase price to be $12 million, and acknowledged that under the operating agreement LCB was obligated to consummate this purchase by December 30, 2024. Arctaris agreed to this amount.
LCB submitted another request to draw funds on October 1, 2024. Arctaris requested further backup. La Cité did not respond until December 12, 2024, and, even then, did not provide all the information needed to justify the draw.
LCB did not pay the Forced Sale Amount by the December 30, 2024, deadline. Under § 17.02 of the operating agreement, LCB’s failure to consummate its purchase of Arctaris’s interest by the contractual deadline automatically gave Arctaris the right to commence and conclude a Forced Sale to a third-party purchaser, without need for consent by LCB. Arctaris asked La Cité to provide documents and information that Arctaris would need to market the Project.
Section 17.03 requires LCB to assist Arctaris in the pursuit of any Forced Sale, and to do so “in good faith and with diligence.” But La Cité, acting for LCB, has refused to provide much of the information sought and needed by Arctaris.
Rather than try to assist Arctaris, LCB served a “Formal Notice of Material Breach by Arctaris” making clear that LCB did not intent to honor Arctaris’s Forced Sale rights. This letter, sent on January 28, 2025, contends that Arctaris “forfeited any right to enforce a Forced Sale by La Cité,” and instructs Arctaris “to cease any efforts to commence or conclude a Forced Sale on its own.”
 
                                                            -6-
 
In response, Arctaris sent LCB written notice on January 30, 2025, stating that LCB’s failure to begin construction of the Project and its failure to assist Arctaris in pursuing a Forced Sale were both “Special Defaults” that, under the Company’s operating agreement, gave Arctaris the right to remove LCB as Managing Member of the Company and LCB Development as Developer of the Project. Arctaris informed LCB that, as allowed under § 11.01 of the Company’s operating agreement, Arctaris was removing and replacing LCB as Managing Member of the Company, it was replacing LCB Development as Developer, and that going forward Arctaris would serve as Managing Member with sole and exclusive control over the business and affairs of the Company.
In the eleven days since Arctaris served the January 30 notice removing LCB as Managing Member, LCB and La Cité have refused to acknowledge that LCB is no longer in charge of the Company and have not cooperated in handing over control of the Company’s files, bank accounts, and Project site.
2.2. Likelihood of Success. The Court finds that Arctaris is extremely likely to succeed on the claims in its new Amended Complaint that (I) LCB committed at least one of the Special Defaults listed in the January 30, 2025, notice, and Arctaris therefore had a contractual right to remove LCB as Managing Member, and (ii) LCB’s refusal to stop holding itself out as and acting as Managing Member is a further breach of the Company’s operating agreement.
2.2.1. Special Default by Not Commencing Construction. It is undisputed that LCB failed to begin construction of the Project by July 31, 2024. Arctaris is extremely likely to succeed in proving that this constitutes a Special Default under the plain language of the Company’s operating agreement.
LCB cannot escape the consequences of failing to meet this deadline by arguing that the delay was Arctaris’s fault, or that Arctaris materially breached the contract first. For the reasons discussed in the findings above, the Court finds that Arctaris is likely to succeed in proving that it did not breach the agreement. In any case, Arctaris is also likely to succeed in proving that LCB waived any alleged breach by Arctaris as to delays in approving draws on capital to pay invoices or as to LCB’s inability to retain a construction manager.
Although LCB insists that Arctaris committed repeated and ongoing material breaches of the operating agreement from May 2023 through at least May 2024, LCB opted to continue to perform under the operating agreement even that it knew of the alleged breaches by Arctaris. In August 2024, two weeks after
 
                                                            -7-
 
Arctaris filed this lawsuit, LCB entered into a Stipulation agreeing to move forward under the operating agreement either by challenging the Forced Sale Notice or by choosing one of its Forced Sale options. Defendants agreed in the parties’ Stipulation that, if they wanted to challenge that determination, they would have to do so by seeking arbitration no later than August 30, 2024. They did not do so. Instead, LCB issued its Forced Sale Election Notice on August 30, 2024, giving notice that LCB had decided to buyout Arctaris.
The Court finds that Arctaris will likely succeed in proving that Defendants’ decision not to seek such an arbitration by the August 30 deadline was a conscious waiver of their right to contend that Arctaris was to blame for construction delays, and that LCB therefore could not be held responsible for Project construction not starting by July 31.
“Waiver is the voluntary and intentional relinquishment of a known right.”[2]  In the context of contractual rights, waiver “implies knowledge of all material facts and an intent to waive, together with a willingness to refrain from enforcing those contractual rights.”[3] “Waiver must be shown clearly, unmistakably, and unequivocally.”[4] Nonetheless, waiver of contract terms or rights “may be express or ‘inferred from a party’s conduct and the surrounding circumstances.’ ”[5] “[I]naction or silence on the part of a plaintiff, in certain circumstances, can bar a plaintiff from relief both equitable and legal.”[6]
 
--------------------------------------------
 
[2] In re Coinmint, LLC, 261 A.3d 867, 893 (Del. Ch. 2021), quoting Realty Growth Invs. v. Council of Unit Owners, 453 A.2d 450, 456 (Del. 1982); accord Psychemedics Corp. v. City of Boston, 486 Mass. 724, 745 (2021).
[3] Id., quoting AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc., 871 A.2d 428, 444 (Del. 2005).
[4] Psychmedics Corp., supra, quoting Boston v. Labor Relations Comm’n, 48 Mass. App. Ct. 169, 174 (1999); accord Manti Holdings, LLC. v. Authentix Acquisition Co., Inc., 261 A.3d 1199, 1210 (Del. 2021).
[5] BourgeoisWhite, LLP v. Sterling Lion, LLC, 91 Mass. App. Ct. 114, 119 (2017), quoting Dynamic Mach. Works, Inc. v. Machine & Elec. Consultants, Inc., 444 Mass. 768, 771 (2005); accord Manti Holdings, supra (“A waiver may be either express or implied….”) (quoting Dirienzo v. Steel P’rs Holdings LP, 2009 WL 854724, at *8 (Del. Ch. Dec. 8, 2009).
[6] In re Coinmint, 261 A.3d at 892, quoting Lehman Bros. Hldgs. Inc. v. Spanish Broad. Sys., Inc., 2014 WL 718430, at *10 (Del. Ch. Feb. 25, 2014); accord Dirienzo, supra, at *5 (“an implied waiver of a right is possible, but only if there is ‘a clear,
<continued…>
 
                                                            -8-
 
Arctaris is very likely to succeed in proving that Defendants were aware of the conduct by Arctaris that they now contend was a material breach of the operating agreement, Defendants agreed in the August 2024 Stipulation that LCB wished to invoke the alleged breaches by Arctaris to relieve LCB from the deadline for starting construction of the Project then it had to do so by seeking arbitration of the issue by August 30, 2024, and LCB voluntarily and intentionally waived its right to do so by not seeking such arbitration and instead giving notice that LCB would buyout Arctaris’s share of the Company. Cf. In re Coinmint, LLC, 261 A.3d 867, 893–894 (Del. Ch. 2021) (finding implied waiver under analogous circumstances).
At oral argument, Defendants noted that ¶ 13 of the Stipulation provides that neither side to this dispute shall be deemed to have admitted any alleged act, omission, or breach by entering into the Stipulation. Defendants’ reliance on ¶ 13 is misplaced. The likely waiver in this case did not occur because LCB entered into the Stipulation. Instead, it occurred in part because LCB agreed in the Stipulation that any challenge to Arctaris’s assertion that LCB was in breach for not timely starting construction had to be asserted by commencing an arbitration proceeding no later than August 30, 2024, and LCB decided not to seek such an arbitration but instead elected to purchase Arctaris’s interest.
In addition, Arctaris is also likely to succeed in showing that LCB waived its right to dispute that it was responsible for missing the deadlines to start construction, because LCB opted to continue to perform under the contract throughout 2023 and 2024 despite its knowledge of Arctaris’s alleged breaches.
Where one party commits a material breach of contract, but the other party elects to continue performing, the contract remains in effect and both parties are bound by its terms. See Kass v. Todd, 362 Mass. 169, 175–176 (1972). “An injured party may refuse to consider a breach as a material one and elect to keep the contract alive. The contract then continues for the benefit of both parties[.]” Lander v. Samuel Heller Leather Co., 314 Mass. 592, 598 (1943).
Of course, a party “may be excused ‘from performance under a contract if the other party is in material breach thereof.” Post Holdings, Inc. v. NPE Seller Rep LLC, C.A. No. 2017-0772-AGB, 2018 WL 5429833, at *5 (Del. Ch. Oct. 29, 2018),
 
--------------------------------------------
 
unequivocal, and decisive act of the party demonstrating relinquishment of the right.’ ”) (quoting 28 Am. Jur. 2d, Estoppel and Waiver § 209 (2009)).
 
                                                            -9-
 
quoting Medicalgorithmics S.A. v. AMI Monitoring, Inc., 2016 WL 4401038, at *24 (Del. Ch. Aug. 18, 2016).
“It is also well-settled, however, that a party may not refuse to perform its contractual obligations after a material breach while simultaneously retaining the benefits of a contract.” Id. If one party materially breaches its obligations under a contract, and the other party chooses to continue to perform under the contract, that “will constitute a conclusive election, in effect waiving the right to assert that the breach discharged any obligation to perform.” Id., quoting  14 Willison on Contracts § 43:15 (4th ed. 1993); accord Seokoh, Inc. v. Lard-PT, LLC, C.A. No. 2020-0631-JRS, 2021 WL 1197593, at *14 n.180 (Del. Ch. Mar. 30, 2021) (party will be deemed to have “waive[d] a breach of a contractual provision without consideration or estoppel” if “the innocent party is aware of the breach and intentionally waives the right not to perform by continuing to perform or to accept the partial performance of the breaching party”) (quoting 23 Williston on Contracts § 63:9 (4th ed. 1993)).
Arctaris is likely to succeed in showing that LCB knowingly acquiesced in Arctaris’s alleged breaches of the operating agreement, and thereby waived any right to invoke those alleged breaches as a defense to or excuse for LCB’s own failure to start construction of the Project. Since “a party may waive—by words or conduct—any contractual right or obligation,” a contracting party “who intentionally permits the other party to openly breach a contractual obligation” may not “later seeking judicial enforcement of the waived contractual obligation.” Vila v. BVWebTies LLC, 2010 WL 3866098, at *10 n.72 (Del. Ch. Oct. 1, 2010).
2.2.2. Special Default by Not Cooperating with Forced Sale. In any case, the Defendants’ insistence that LCB is not responsible for failing to begin construction of the Project on time would make no difference even if it were supported by the evidence and LCB had not waived this defense. Arctaris is entitled under § 11.01 of the operating agreement to remove LCB as Managing Member if there has been any “Special Default,” a term defined to include any breach by LCB of any material provision of the operating agreement.
Arctaris is extremely likely to succeed in proving that LCB breached its obligation under § 17.03 to assist Arctaris in the pursuit of any Forced Sale, that this is a material provision of the contract, and that this breach is therefore a Special Default that triggers Arctaris’s contractual right to remove LCB as
 
                                                            -10-
 
Managing Member, whether or not Arctaris ultimately succeeds in showing that LCB’s prior failure to commence construction was also a Special Default.
As discussed above, Arctaris automatically became entitled to sell the Project when LCB failed to complete its purchase of Arctaris’s interest in the Company. LCB elected on August 30, 2024, not to challenge Arctaris’s Forced Sale Trigger Notice and instead exercised its buyout Arctaris. LCB was required under § 17.02 of the operating agreement to pay the agreed-upon Forced Sale Amount within four months, by December 30, 2024. When LCB failed to meet that deadline, the operating agreement automatically gave Arctaris the right to commence and conclude a Forced Sale to a third-party purchaser on its own.
After Arctaris announced its intent to engage in such a Forced Sale, LCB refused to provide information sought and needed by Arctaris to do so, and has expressly refused to cooperate with those efforts by trying to order Arctaris to make no further efforts to conduct a Force Sale.
Arctaris is extremely likely to succeed in showing LCB’s failure to assist Arctaris in selling the Project is a material breach of § 17.03 and constitutes a Special Default under the operating agreement, and therefore provides an independent basis for Arctaris to have removed LCB as Managing Member.
2.3. Irreparable Harm and Balance of Harms. Since Arctaris has shown that it is extremely likely to succeed on the merits of its claims, the Court finds that Arctaris’s proof that it will suffer irreparable harm without the requested preliminary injunction is more than adequate, and outweighs any harm that Defendants will experience if the injunction issues.
“What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits.” Hull Municipal Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co., 399 Mass. 640, 644 (1987), quoting Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980). In other words, irreparable harm must be measured together with likelihood of success on a “sliding scale.” Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 485 (1st Cir. 2009). “Simply stated, more of one excuses less of the other.” EEOC v. Astra USA, Inc., 94 F.3d 738, 743 (1st Cir. 1996), quoting Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150 153 (6th Cir. 1991).
Since the evidence shows that LCB committed Special Defaults by not starting construction on the Project and by interfering with Arctaris’s contract right to
 
                                                            -11-
 
undertake a Forced Sale, Arctaris had the contractual right to remove and replace LCB as the Managing Member of the Company. When Arctaris exercised that right a week ago, LCB lost the power and authority to take any further action as Managing Member of the Company.
Having negotiated for the right to take management control of the company in the event of a Special Default by LCB, Arctaris would suffer irreparable harm if LCB were to continue to ignore the removal notice and continue to conduct the Company’s business. An irreparable injury is any harm that “cannot be vindicated by litigation on the merits.” Koshy v. Sachdev, 477 Mass. 759, 770 (2017). For example, “[a] corporation may suffer irreparable injury due to severe corporate dysfunction or a frustration of the company's purpose, or by placing the company's business in jeopardy.” Id. Arctaris will similarly suffer irreparable injury if Defendants are permitted to frustrate Arctaris’s contractual rights to take control of the Company, try to sell the Project and recoup its investment, and redeploy its capital to some other venture. Those rights could not be vindicated by awarding money damages in a final judgment.
The Court gives little weight to Defendants’ claims that issuing the preliminary injunction will cause them harm. The Company’s operating agreement gives Arctaris the right to replace LCB as Managing Member and replace LCB Development as Developer under these circumstances. That Defendants may disagree with future business decisions by the new manager is of no moment.
As to Defendants’ fear that they will suffer “reputational damage” if forced to stop their work on behalf of the Company, Arctaris has a contractual right under these circumstances to remove LCB as manager even if doing so may besmirch Defendants’ reputation. By entering into an operating agreement that gives Arctaris the right to remove LCB as Managing Member in the event of any Special Default, LCB and by extension its sole member La Cité accepted the risk that LCB could someday be forced from the Project and that Defendants may suffer reputational injury as a result.
That Defendants are now unhappy with the deal that LCB struck, and fear they will suffer reputational harm if Arctaris enforces its right to remove LCB as Managing Member, should not prevent Arctaris from doing what the operating agreement expressly permits. “Under Delaware law, sophisticated parties are bound by the terms of their agreement. Even if the bargain they strike ends up a bad deal for one or both parties, the court’s role is to enforce the agreement as written.” Glaxo Grp. Ltd. v. DRIT LP, 248 A.3d 911, 919 (Del. 2021). “Parties
 
                                                            -12-
 
have a right to enter into good and bad contracts, the law enforces both.” Id., quoting Nemec v. Shrader, 991 A.2d 1120, 1126 (Del. 2010). “[I]t is not the job of a court to relieve sophisticated parties” like LCB “of the burdens of contracts they wish they had drafted differently[.]” CompoSecure, L.L.C. v. CadUX, LLC, 206 A.3d 807, 811 n.6 (Del. 2018), quoting DeLucca v. KKAT Mgmt., L.L.C., C.A. No. 1384-N, 2006 WL 224058, at *2 (Del. Ch. Jan. 23, 2006).
Defendants’ plea to “preserve the status quo” is also unavailing.
First, the preliminary injunction sought by Arctaris would not alter the legal status quo. Arctaris has already served notice that it has removed LCB as Managing Member of the Company. LCB is required to comply with that notice. Though § 11.06 of the operating agreement gives LCB the right to commence an arbitration proceeding to challenge Arctaris’s removal of LCB, it provides that if LCB were to prevail then Arctaris would be required to reinstate LCB as Managing Member. This makes clear that, unless and until an arbitrator were to reverse Arctaris’s replacement of LCB as Managing Member, the operating agreements requires that LCB must step aside.
In any case, a court may issue a preliminary injunction granting mandatory relief even if it has the effect of temporarily granting the plaintiff part or even all of what it seeks as final relief. See, e.g., Woods v. Executive Office of Communities and Development, 411 Mass. 599, 601-602 (1992) (affirming preliminary injunction ordering restoration of certain monthly housing voucher benefits); Alexander & Alexander, Inc. v. Danahy, 21 Mass. App. Ct. 488, 502 (1986) (affirming preliminary injunction to enforce contractual covenant not to compete). Although “[a] preliminary injunction ordinarily is issued to preserve the status quo pending the outcome of litigation,” Doe v. Superintendent of Schools of Weston, 461 Mass. 159, 164 (2011) (emphasis added), the availability of preliminary injunctive relief is not limited to such cases.
“[W]here preserving the status quo will perpetuate harm against the moving party,” a preliminary injunction “altering the status quo may be appropriate.” O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 1002 (10th Cir. 2004) (Seymour, J., concurring in part), aff’d and remanded sub nom. Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal, 546 U.S. 418 (2006). As one Federal Court of Appeals has explained:
The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. It often happens that this purpose
 
                                                            -13-
 
is furthered by preservation of the status quo, but not always. If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, … by the issuance of a mandatory injunction, … or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury. The focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo.
Canal Auth. of State of Florida v. Callaway, 489 F.2d 567, 576 (5th Cir. 1974) (emphasis added; citations omitted). It appears that every United States Court of Appeals to address the issue agrees.[7]
Although these cases were decided under the federal rules of civil procedure, the same principle applies under Mass. R. Civ. P. 65. See generally Smaland Beach Ass’n, Inc. v. Genova, 461 Mass. 214, 228 (2012) (judicial construction of federal rules of civil procedure applies to parallel Massachusetts rules, “absent compelling reasons to the contrary or significant differences in content” (quoting Strom v. American Honda Motor Co., 423 Mass. 330, 335 (1996), and Rollins Envtl. Servs., Inc., v. Superior Court, 368 Mass. 174, 180 (1975)).
Finally, since the Court concludes that Arctaris will suffer irreparable harm without the preliminary injunction it is seeking, and that Defendants will not suffer any harm from the preliminary injunction that they did not accept and bargain for by allowing LCB to enter into the Company’s operating agreement, the balance of harms also favors allowing Arctaris’s motion.
 
--------------------------------------------
 
[7] See, e.g., Braintree Laboratories, Inc. v. Citigroup Global Markets, Inc., 622 F.3d 36, 41 (1st Cir. 2010) (quoting Callaway, supra); Tom Doherty Assocs., Inc., v. Saban Entertainment, Inc., 60 F.3d 27, 34 (2d Cir. 1995); Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806, 814 (3d Cir. 1989); Aggarao v. MOL Ship Mgmt. Co., Ltd., 675 F.3d 355, 378 (4th Cir. 2012); Callaway, supra (5th Cir.); United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Auth. 163 F.3d 341, 348 (6th Cir. 1998); Chicago United Industries, Ltd. v. City of Chicago, 445 F.3d 940, 943-944 (7th Cir. 2006); Ferry-Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589, 593 (8th Cir. 1984); Golden Gate Restaurant Ass’n v. City and County of San Francisco, 512 F.3d 1112, 1116 (9th Cir. 2008); O Centro Espirita Beneficiente Uniao Do Vegetal, supra (10th Cir.); Melendez v. Secretary, Florida Dept. of Corrections, No. 21-13455, 2022 WL 1124753, at *18 (11th Cir. April 15, 2022) (unpublished); Hanson v. District of Columbia, 120 F.4th 223, 244 (D.C. Cir. 2024).
 
                                                            -14-
 
ORDER
Plaintiff’s motion for a preliminary injunction is allowed. Defendants’ motion for a preliminary injunction is denied.